Present: All the Justices

CHESTERFIELD COUNTY

                                    OPINION BY
v.  Record No. 002942       JUSTICE LAWRENCE L. KOONTZ, JR.
                                November 2, 2001
MARGARET B. STIGALL, TRUSTEE, ET AL.


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge


In this appeal, we consider whether Code § 58.1-3241(A) authorizes Chesterfield County to assess "roll-back" taxes, defined in Code § 58.1-3237, against certain real property as a result of conveyances of the entire property in two separate parcels by the owner, in the absence of a change in the use of the property.

BACKGROUND

The material facts are not in dispute. In 1954, Charles W. Stigall acquired, by single deed, two contiguous parcels of real property consisting of approximately 135 acres in Chesterfield County. The larger of the two parcels, denominated by the parties in this case as the "Falling Creek" parcel, consisted of approximately 120 acres. The smaller parcel, denominated by those parties as the "A.G. Tyler" parcel, consisted of approximately 15 acres.[1]

_____

[1]For clarity we will hereafter omit any reference to the A.G. Tyler parcel even though the record reflects that a portion

In 1975, pursuant to the applicable provisions of the statutory scheme for Special Assessment for Land Preservation contained in Code § 58.1-3229 et seq., Chesterfield County adopted an ordinance providing for reduced assessment and taxation of real estate devoted to agricultural, horticultural, forest, or open space use (special land use tax program). Thereafter, the Falling Creek parcel was devoted to forest use, as defined in Code § 58.1-3230, and accepted by the County as qualified for reduced assessment and taxation under its special land use tax program.

In 1979 or 1980, the Commonwealth acquired by eminent domain a portion of the Falling Creek parcel for the construction of the Powhite Parkway, "a limited access, interstate grade freeway." The Powhite Parkway bisected the Falling Creek parcel into two unequal sections; one with approximately 26 acres lying north of the freeway and the other with approximately 84 acres lying south of the freeway. Although the two sections of the Falling Creek parcel were physically separated by the construction of the Powhite Parkway,

of it was involved in the various proceedings and conveyances which we will subsequently relate. We do so because there is a discrepancy in the record regarding the total acreage of that parcel impacted by those proceedings and conveyances, and the parties agree that taxation of the A.G. Tyler parcel is not at issue in this appeal.

2

the County continued to tax the Falling Creek parcel as a single unit under its special land use tax program. At the time of the eminent domain taking of a portion of this parcel, Charles Stigall did not record a subdivision plat or otherwise take any action that would reflect in the County's land records a legal separation of the parcel into two separate tracts.

Following the death of Charles Stigall in 1998, the Falling Creek parcel became the property of his widow, Margaret B. Stigall. On October 7, 1999, for the purpose of estate planning, Margaret Stigall conveyed that portion of the Falling Creek parcel lying south of the Powhite Parkway by deed to The Margaret B. Stigall Living Trust, a revocable inter vivos trust. On the same date and for the same purpose, she conveyed that portion of the Falling Creek parcel lying north of the Powhite Parkway by deed to The Stigall Family Limited Partnership. These deeds along with a 1988 plat reflecting the physical division of the Falling Creek parcel were duly recorded in the County land records. No change in the use of the property occurred as a result of these conveyances.

On December 27, 1999, the County, pursuant to Code § 58.1-3241(A), assessed roll-back taxes against the Falling Creek parcel in the amount of $22,087.74 based on the above described conveyances by Margaret Stigall. The amount of the tax represented the difference between the actual tax paid under the

3

special land use tax program and the tax which would have been due had the real estate been taxed on its fair market value assessment during "the five most recent complete tax years." Code § 58.1-3237(B). Thereafter, on May 25, 2000, Margaret Stigall, in her capacity as trustee of her inter vivos trust, and The Stigall Family Limited Partnership (collectively, the taxpayers) filed a joint application in the Circuit Court of Chesterfield County for correction of erroneous assessment of these roll-back taxes.

Upon the filing of the County's responsive pleading and the parties' agreement that the material facts were not disputed, the trial court permitted the taxpayers to make an oral motion for summary judgment.[2] In a letter opinion dated August 21,

_____

[2]The County styled its pleading responding to the taxpayers' application as a "demurrer" and subsequently filed a "Memorandum in Support of Demurrer." Within these pleadings, however, the County contested the factual allegations of the application and, thus, its challenge to the suit cannot be viewed as constituting a "demurrer" and proper supporting argument for that form of pleading, which admits the truth of the facts contained in the pleading to which it is addressed. Cox Cable Hampton Roads, Inc. v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). It is evident from the record, however, that the County consented to the case being resolved by the trial court on the taxpayers' oral motion for summary judgment because the facts asserted in the taxpayers' application were not disputed for purposes of resolving the legal issue before the trial court. Accordingly, we will review the judgment of the trial court under the standard of review applicable in such cases. Shelor Motor Co. v. Miller, 261 Va. 473, 478, 544 S.E.2d 345, 348 (2001).

2000, and subsequently adopted by reference in the final order, the trial court, applying what it characterized as the "ordinary and commonly understood meanings" of the terms used in Code § 58.1-3241(A), initially ruled that the Falling Creek parcel "was not separated and split[-off] when [Margaret] Stigall made the conveyances of 1999, but years earlier – when the Commonwealth built the Powhite Parkway." Because this separation did not result from an "action of the owner," the trial court concluded that the roll-back tax assessment permitted by Code § 58.1-3241(A) was not triggered. The trial court further ruled that following the 1999 conveyances to the trust and the partnership, the taxpayers "made the necessary attestation that the properties will continue to be devoted to 'forest use,' and each of the parcels is of sufficient acreage to qualify for inclusion in the land use [tax] program authorized by Code § 58.1-3231" and, thus, "satisfy the requirements of Code § 58.1-3237(D)."

In its final order, entered on September 12, 2000, the trial court incorporated by reference its prior letter opinion, granted the taxpayers' motion for summary judgment, and ordered that the County "exonerate [the property in question] of all roll-back taxes imposed in 1999." In an order dated February 23, 2001, we awarded the County this appeal.

5

DISCUSSION

Beyond question the statutory scheme invoked by this case regarding a special land use tax program that provides for reduced assessment and taxation of real estate devoted to agricultural, horticultural, forest, or open space use is intended by the legislature to promote the preservation of such real estate for the public benefit.  The key to that preservation is the amelioration of the pressure that forces landowners to convert their property to more intensive uses. One source of that pressure is the assessment of property devoted to one or more of these uses at values incompatible with such use.  See Code § 58.1-3229 (1984 Repl. Vol.).

In this context, one intended goal of this statutory scheme is the continued qualifying use of property which has qualified previously for the reduced taxation provided by a special land use tax program following a proper application by the owner. Code § 58.1-3234.  Thus, under Code § 58.1-3237(A), when the qualifying use of particular real property changes to a "nonqualifying use" or the zoning of that property is changed to a "more intensive use" at the request of the owner or his agent, that portion of the property which no longer qualifies for reduced assessment and taxation "shall be subject to additional taxes . . . referred to as roll-back taxes."  Pertinent to the present case, Code § 58.1-3237(D) expressly provides that

6

"[l]iability to the roll-back taxes shall attach when a change in use occurs . . . . Liability to the roll-back taxes shall not attach when a change in ownership of the title takes place if the new owner . . . continues the real estate in the use for which it is classified" prior to the transfer of title to the new owner.

In the present case, the County concedes that the real estate in question has not undergone a change in use and in subsequent years will qualify for reduced assessment and taxation under its special land use tax program so long as that real estate continues to be devoted to forest use by the new owners. Nonetheless, the County contends here, as it did in the trial court, that Code § 58.1-3241(A) authorizes it to assess roll-back taxes against that real estate as a result of the 1999 conveyances by Margaret Stigall.

Code § 58.1-3241(A) provides that:

> Separation or split-off of lots, pieces or parcels of land from the real estate which is being valued, assessed and taxed under an ordinance adopted pursuant to this article, either by conveyance or other action of the owner of such real estate, shall subject the real estate so separated to liability for the roll-back taxes applicable thereto, but shall not impair the right of each subdivided parcel of such real estate to qualify for such valuation, assessment and taxation in any and all future years, provided it meets the minimum acreage requirements and such other conditions of this article as may be applicable. Such separation or split-off of lots shall not impair the right of the remaining real estate to continuance of such valuation, assessment and taxation without

7

liability for roll-back taxes, provided it meets the minimum acreage requirements and other applicable conditions of this article.

No subdivision of property which results in parcels which meet the minimum acreage requirements of this article, and which the owner attests is for one or more of the purposes set forth in § 58.1-3230, shall be subject to the provisions of this subsection.

The County asserts that although the Falling Creek parcel was physically "separated" as a result of the prior eminent domain taking of a portion of it by the Commonwealth, Code § 58.1-3241(A) contemplates a legal separation, which occurred when the remaining acreage of that parcel was conveyed in separate parcels to two different owners in 1999 by Margaret Stigall. The County further asserts that the "safe-harbor" provision provided by the second paragraph of Code § 58.1-3241(A) is not applicable because the taxpayers concede that the purpose of the 1999 conveyances was for estate planning and, thus, Margaret Stigall could not, and did not, attest that the purpose of the legal separation was for one or more of the purposes of agricultural, horticultural, forest, or open space use set forth in Code § 58.1-3230.

In response, the taxpayers first contend that the trial court properly ruled the eminent domain taking by the Commonwealth caused the separation of the Falling Creek parcel rather than the 1999 conveyances by Margaret Stigall. Continuing, the taxpayers further contend that because the

8

eminent domain taking did not subject the property to liability for roll-back taxes at that time, Code § 58.1-3242, the trial court correctly determined that Code § 58.1-3237(D) rather than Code § 58.1-3241(A) controlled whether roll-back taxes were to be assessed against the "separated" parcels.  Finally, the taxpayers maintain that even if the 1999 conveyances potentially subjected these parcels to liability for roll-back taxes under Code § 58.1-3241(A), the safe-harbor provision of that statute applies because the separated parcels continue to be used "for one or more of the purposes set forth in Code § 58.1-3230."

We do not agree with the contentions of either party in their entirety.  However, for the reasons that follow, we are of opinion that the trial court reached the correct result although for the wrong reason.  Accordingly, we will assign the correct reason and affirm that result.  See Mitchem v. Counts, 259 Va. 179, 191, 523 S.E.2d 246, 253 (2000).

Under familiar principles, when we construe a statute we endeavor to ascertain and give effect to the intention of the legislature.  In doing so, we must assume that the legislature chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute.  Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).  Moreover, we examine a statute in its entirety, rather than by isolating particular words or phrases.  Shelor Motor

Co., 261 Va. at 479, 544 S.E.2d at 348.  With respect to a special land use tax program, we also are of opinion that the relief it affords in the form of a special assessment "operates as an exemption or deferral from taxation.  Consequently, all provisions of the [authorizing] Act ought to be strictly construed against the taxpayer."  1978-79 Op. Va. Att'y Gen. 273, 274.

With these principles in mind, we begin our analysis by addressing the trial court's initial conclusion that the eminent domain taking by the Commonwealth of a portion of the Falling Creek parcel constituted a "separation or split-off" of that property as contemplated by Code § 58.1-3241(A).  Undoubtedly, this taking and, more particularly, the barrier created by the subsequent construction of the Powhite Parkway resulted in a physical division of the Falling Creek parcel.  By its express terms, however, this statute is only applicable to a "conveyance or other action of the owner."  A taking by eminent domain is not an action of the owner in any sense.  Moreover, this statute, viewed in its entirety, clearly evinces a legislative intent that the triggering "subdivision of property" into "lots, pieces or parcels of land" be a legal separation rather than a mere physical separation.

The creation of new lots, pieces, or parcels of land is a legal separation of property because it results from action by

the owner and involves, at a minimum, a change in the legal description of the property, either by metes and bounds or by plat, which is duly recorded in the appropriate land records. Such was exactly the case when Margaret Stigall recorded the 1999 deeds and the 1988 plat in the County's land records, legally separating the Falling Creek parcel into two separate parcels owned by the taxpayers. Accordingly, we hold that the trial court erred in ruling that the eminent domain taking of a portion of the Falling Creek parcel caused a "separation or split-off" of that property as contemplated by Code § 58.1-3241(A).

As we have previously noted, the trial court's conclusion that the Falling Creek parcel was separated by the eminent domain taking of a portion of that parcel, rather than by Margaret Stigall's conveyances, logically led it to then apply the provisions of Code § 58.1-3237(D) which, if applicable, would support the ultimate result reached by the trial court that the property in question was not liable to the assessment of roll-back taxes. This would be so because the County concedes that no change in the use or zoning of the property had occurred and the taxpayers, as new owners, continued to devote the property to forest use for which it had qualified for reduced assessment and taxation under the County's special land use tax program. We are of opinion, however, that the proper

11

construction of Code § 58.1-3241(A) nonetheless supports the result reached by the trial court under the facts of this case.

Code § 58.1-3241(A) is only applicable when the conveyance or other action of the owner of real estate causes a separation or split-off of lots, pieces, or parcels of land "<u>from the real estate which is being valued, assessed and taxed</u>" under a local special land use tax ordinance. (Emphasis added). The "remaining real estate" continues to receive the benefit of reduced assessment and taxation "without liability for roll-back taxes" provided it continues to qualify for beneficial treatment. Thus, by its express terms, this statute contemplates a separation or split-off of a portion of the real estate in such a manner that there is a "remaining" portion of the original parcel.[3] It does not contemplate or address the conveyance of the original parcel in its entirety by the owner. Rather, when the owner conveys the real estate in its entirety to a new owner or owners either as one parcel or as separate "lots, pieces or parcels," the liability to roll-back taxes, if any, is controlled by the provisions of Code § 58.1-3237(D). In addition, the owner need not satisfy the safe-harbor provision

---

[3]In the present case, the County concedes that it did not treat either of the two parcels created by the 1999 conveyances as the "remaining real estate" that was not subject to roll-back taxes. Rather, the County taxed both parcels.

12

of Code § 58.1-3241(A) by attesting that the subdivision of the property is for one or more of the purposes set forth in Code § 58.1-3230 because the potential liability to roll-back taxes under Code § 58.1-3241(A) has not been triggered by such a conveyance or conveyances.

In the present case, it is undisputed that only a change in ownership occurred and the property continued to be devoted to forest use and qualified for reduced assessment and taxation under the County's special land use tax program.  Accordingly, we hold that the trial court reached the right result that the property in question was not liable to the roll-back taxes assessed against it by the County.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court in favor of the taxpayers.

<u>Affirmed</u>.

13