PRESENT:  Keenan, Koontz, Kinser, Lemons, Goodwyn, and
          Millette, JJ., and Carrico, S.J.


W&W PARTNERSHIP

                                        OPINION BY
v.          Record No. 090328     JUSTICE S. BERNARD GOODWYN
                                        February 25, 2010
PRINCE WILLIAM COUNTY BOARD
OF ZONING APPEALS, ET AL.


          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                Herman A. Whisenant, Jr., Judge Designate

     In this appeal we consider whether a voluntary conveyance

of land to the Commonwealth for a road that physically divided

the landowners' remaining property resulted in a legal

subdivision of that remaining property.

                              Background

     In 1940, Bryon D. and Georgette I. Woodside (the

Woodsides) conveyed 1.44 acres of an approximately 48-acre

tract of land located in Prince William County to the

Commonwealth of Virginia.  The 1.44 acres of land was used to

extend a public road, Route 234, which then bisected the

remainder of the Woodsides' tract of land, leaving

approximately 40 acres to the south of Route 234 and 5.17 acres

to the north.

     The deed conveying the land to the Commonwealth only

contains a metes and bounds description of the strip of land

conveyed to the Commonwealth.  The deed does not contain a

metes and bounds description of the property retained by the Woodsides, and no plat showing the Woodsides' remaining property was entered into the land records. The Woodsides' remaining property continued to be taxed as one parcel.

The Woodsides owned the remaining property until 2000, when it was conveyed by legal description to the First Baptist Church of Gainesville. The property was conveyed to W&W Partnership in 2005. Thereafter, W&W Partnership subdivided and conveyed a portion of the 40 acres to the south of Route 234, leaving W&W Partnership with 15.3 acres of property consisting of 10.13 acres to the south of Route 234 and 5.17 acres to the north.

W&W Partnership sought a separate address and Grid Parcel Identification Number (GPIN)[1] from the Prince William County Zoning Administrator (Zoning Administrator) for the 5.17 acres of land north of Route 234, claiming that the 5.17 acres of land were a separate, legally nonconforming lot created in 1940 by the Woodsides' sale of the 1.44 acres to the Commonwealth. The Zoning Administrator ruled that the Woodsides' parcel was not legally subdivided by the conveyance in 1940, but rather the property the Woodsides retained after the 1940 conveyance

---

[1] A GPIN is a unique 10-digit number that is used to identify a specific parcel of land for tax, permitting and other similar purposes.

to the Commonwealth continued as one parcel with two noncontiguous portions.  Thus, ruled the Zoning Administrator, the designated 5.17-acre portion of W&W Partnership's 15.3-acre parcel could not receive a separate address and GPIN because the new 5.17-acre lot, created through subdivision of the 15.3-acre parcel, would not meet Prince William County's A-1 zoning district requirement, enacted in 1982, that all lots be at least 10 acres.

W&W Partnership appealed to the Prince William County Board of Zoning Appeals (BZA), which affirmed the decision of the Zoning Administrator.  W&W Partnership appealed to the circuit court, and the circuit court affirmed the BZA decision.  W&W Partnership appeals the judgment of the circuit court.

Analysis

W&W Partnership claims that the circuit court erred in failing to find that the conveyance in 1940 by the Woodsides was an action by the owners that legally subdivided the 5.17 acres north of Route 234 from the rest of the Woodsides' parcel.  W&W Partnership claims that the 5.17 acres of land north of Route 234 was a separate conforming A-1 zoning district lot in 1958, when Prince William County adopted its first zoning ordinance.  Thus, it claims that in 1982 when the Prince William County zoning ordinances were amended to require lots in A-1 zoning districts to contain at least 10 acres, the

3

5.17-acre parcel of land became a legal nonconforming lot.  W&W Partnership argues that the 5.17 acres of land located north of Route 234 is therefore entitled to a separate GPIN and address.

Responding, the BZA and Zoning Administrator contend that the 5.17 acres of land north of Route 234 was not legally separated from the parent tract in 1940 and presently is part of a 15.3-acre parcel owned by W&W Partnership.  They contend that the 15.3-acre parcel is located within an A-1 zoning district, which, as of 1982, requires all new lots to contain at least 10 acres.  Thus, the court did not err in affirming the BZA's decision denying W&W Partnership's request for a separate GPIN and address for the 5.17-acre portion of the parcel.

On appeal from the BZA to the circuit court, "the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct."  Code § 15.2-2314.  The circuit court considers questions of law de novo.  Id. Likewise, this Court accords a presumption of correctness to the circuit court's factual findings but reviews its conclusions of law de novo.  Hale v. Board of Zoning Appeals, 277 Va. 250, 268, 673 S.E.2d 170, 179 (2009); Lovelace v. Board of Zoning Appeals, 276 Va. 155, 158, 661 S.E.2d 831, 832 (2008).

We must resolve the issue of whether the 5.17 acres of

4

land was legally subdivided from the parent tract prior to 1982, so as to qualify the 5.17 acres as a separate nonconforming lot. All parties agree that this Court's decision in Chesterfield County v. Stigall, 262 Va. 697, 554 S.E.2d 49 (2001), is controlling in this instance.

This Court stated in Stigall that the creation of a new lot "is a legal separation of property because it results from action by the owner and involves, at a minimum, a change in the legal description of the property, either by metes and bounds or by plat, which is duly recorded in the appropriate land records." Id. at 705, 554 S.E.2d at 54. In Stigall, the landowner's parcel of property was physically divided when the Commonwealth acquired, by eminent domain, a portion of the parcel for the construction of a freeway. Id. at 700, 554 S.E.2d at 51. The freeway bisected the remaining parcel into two unequal sections, but the property continued to be taxed as one parcel and the owner did not record a subdivision in the county's land records. Id. at 700-01, 554 S.E.2d at 51. We concluded that a legal separation of the landowner's remaining parcel had not been effected by the physical separation caused by the freeway because the Commonwealth acquired the property by eminent domain, not through an action by the owner, and the owner had not duly recorded a change in the legal description of the remaining property. Id. at 705, 554 S.E.2d at 54.

While conceding that Stigall is controlling authority, W&W Partnership argues that its correct application yields the opposite result to that reached by the circuit court. W&W Partnership argues that Stigall found that a physical division of land, caused by an action of the state (condemnation), did not effect a "legal separation" or subdivision of property. W&W Partnership contends, however, that some "action by the owner," such as a conveyance, is sufficient to effect legal separation of property, and the 1940 conveyance was an "action by the owner" sufficient to legally separate the 5.17 acres from the parent tract.

W&W Partnership claims a distinction between a condemnation, which it claims effects a mere physical separation of property, and a voluntary conveyance by an owner, which it argues results in a legal separation of the remaining property. W&W Partnership further argues that the 1940 Woodsides deed memorialized a bona fide sale of 1.4 acres to the Commonwealth with a metes and bounds description and that a "change in the legal description of the property" resulted when the Woodsides' 1940 deed of conveyance was recorded. Thus, W&W Partnership argues that the 5.17 acres was separated legally and physically by the 1940 conveyance. We disagree.

We recognize that when Bryon and Georgette Woodside conveyed the 1.44-acre parcel of land to the Commonwealth, the

6

conveyance physically bisected their remaining property, creating noncontiguous portions. Moreover, in contrast to Stigall, in which the Commonwealth acquired the parcel by eminent domain, the Woodsides voluntarily conveyed the 1.44-acre parcel to the Commonwealth. This was indeed an action on the part of the landowners. However, we hold that the mere act of conveying property to the Commonwealth did not legally separate the noncontiguous portions of the Woodsides' remaining property. Such legal separation of property must be shown by proof that the owner, at minimum, duly recorded a change in the legal description of the property either by metes and bounds or by plat. Stigall, 262 Va. at 705, 554 S.E.2d at 54.

Upon conveyance of the 1.44 acres to the Commonwealth in 1940, the Woodsides did not record a changed legal description of their property. The 1940 deed only provides a metes and bounds description of the 1.44-acre parcel conveyed to the Commonwealth. The 1940 deed does not set forth a new legal description of the remaining noncontiguous lot, and the Woodsides did not file a plat in the land records showing any new boundaries. Thus, the owners did not memorialize, by metes and bounds or by plat, any intended or desired legal separation of the noncontiguous portions. Neither did the owners record in the appropriate land records anything indicating that the

7

property was no longer one unit.[2]  On the contrary, the Woodsides continued to treat the property as one parcel after the 1940 conveyance.  The tax records reflect that their property continued to be taxed as one parcel.  Therefore we hold that the 1940 conveyance to the Commonwealth did not legally separate the Woodsides' remaining property, and that the 5.17 acres of land is not entitled to its own GPIN and address as a separate lot.

## Conclusion

Accordingly, for the reasons stated, we affirm the circuit court's judgment.

Affirmed.

---

[2] With no plat or metes and bounds describing the 5.17-acre portion as a unit, it clearly was not a "lot" when Prince William County adopted its 1958 zoning ordinance, which required the property to be "shown on a plat of record or considered as a unit of property and described by metes and bounds" in order to be a separate lot.  Prince William County, Zoning Ordinance § 1-44 (1958).

8