# CIRCUIT COURT  OF WESTMORELAND COUNTY

George J. Ripol et al.

v.

Westmoreland County
Industrial Development
Authority et al.

Case No. CL09-92

George J. Ripol et al.

v.

Robert Fink et al.

Case No. CL09-141

George J. Ripol et al.

v.

Westmoreland County
Board of Zoning Appeals et al.

Case No. CL10-5

December 28, 2010

By Judge Jay T. Swett

The plaintiffs in these three related cases are landowners and citizens of Westmoreland County who have sued the Westmoreland Board of Supervisors, the Westmoreland County Industrial Development Authority, the Westmoreland County Zoning Administrator, the Board of Zoning Appeals of Westmoreland County, and the O'Gara Group, Inc. The suits arise out of the plaintiffs' objections to various governmental actions related to the O'Gara Group's efforts to build a training facility and academy in Westmoreland County. Case No. CL09-92 is a claim under the Virginia Freedom of Information Act and is against the Westmoreland County Board of Supervisors, the Westmoreland County Industrial Development Authority, and Robert Fink, the Westmoreland County zoning administrator. The individual members of the Westmoreland Board of Supervisors and the Westmoreland County Industrial Development Authority are named defendants and sued in their official and individual capacities in Case No. CL09-92. Case No. CL09-141 is an action for declaratory and injunctive relief against the Westmoreland County Board of Supervisors, the Westmoreland County zoning administrator, and the O'Gara Group. Case No. CL10-05 is a Petition for Writ of Certiorari seeking a review of a decision of the Westmoreland Board of Zoning Appeals.

The cases were consolidated for purposes of addressing pretrial matters as well as the trial that was held on September 20, 2010. Following the presentation of evidence, the parties filed post trial briefs addressing all claims and defenses.

*Procedural and Factual History*

On January 12, 2009, the Westmoreland County Industrial Development Authority and the Westmoreland Board of Supervisors met in a joint session. During the joint session, the members of each body moved to go into a closed session, each citing Va. Code § 2.2-3711(A)(5) as the basis for the closed session. Section 2.2-3711(A)(5) permits a public body to hold a closed meeting to discuss a prospective business or industry or the expansion of an existing business where no previous announcement has

been made of the business' interest in locating its facilities in the community. Following the closed meeting, the bodies reconvened in open session. The Authority announced it had received and accepted an offer by the O'Gara Group to purchase a "shell building" and 25 acres from the Authority. Representatives of the O'Gara Group then made a presentation to the two bodies during the public joint session describing the facility planned for the shell building and the 25 acre parcel. The presentation indicated that the facility would also include a 350 acre parcel that adjoined the Authority's land. O'Gara described the facility as one that would provide tactical training to governmental law enforcement agencies and other security professionals.

Subsequent to the joint meeting, a request was made of Robert Fink, the Westmoreland County zoning administrator, to provide copies of all documents relating to the contract between O'Gara and the Authority. After these documents were provided, the plaintiffs supplemented their request and asked for a copy of one specific document referred to in the O'Gara contract. That document was never provided. The requested document was referred to as a "letter of compliance." After multiple requests, the plaintiffs were told it did not exist.

O'Gara then submitted a Phase 1A site plan to the zoning administrator in which O'Gara requested approval for the construction of classroom and office buildings. Also included in Phase 1A were restrooms, a parking area, walkways, and a flag pole. The Phase 1A site plan was approved on August 24, 2009. The plaintiffs noted an appeal to the Westmoreland Board of Zoning Appeals (BZA). While the appeal was pending before the BZA, O'Gara requested and obtained approval for a Phase 1B site plan. The Phase 1B site plan was for three firearm ranges to be used in conjunction with the training facility. Mr. Fink approved the Phase 1B site plan on September 22, 2009. The approval of the Phase 1B site plan was then appealed to the BZA by others, who are not parties to these three suits. The two appeals were heard jointly by the BZA on December 14, 2009. The BZA affirmed the zoning administrator's approvals of the Phase 1A and Phase 1B site plans. Requests to review both decisions of the BZA were filed in this Court. Case No. CL10-05 is the appeal of the BZA approval of Phase 1A. The BZA approval of the Phase 1B site plan was Case No. CL10-06, styled Wilbur Dameron and Lisa Clark v. Board of Zoning Appeals of Westmoreland County. This case was dismissed with prejudice at the beginning of the September 20, 2010, trial.

Case No. CL09-92

*Claims under Virginia Freedom of Information Act*

The plaintiffs contend that the Westmoreland Board of Supervisors and the Westmoreland Industrial Development Authority violated the

provisions of the Virginia Freedom of Information Act during the joint meeting of January 12, 2009. More specifically, the plaintiffs contend that the closed session did not comply with the requirements of Va. Code § 2.2-3712 which sets forth the procedures for conducting closed meetings. Further, the plaintiffs contend that the exemption cited by both bodies to justify the closed meeting was not valid.

Section 2.2-3712(A) of the Act sets forth the specific procedures for a public body to follow to convene a closed meeting.

> No closed meeting shall be held unless the public body proposing to convene such meeting has taken an affirmative recorded vote in an open meeting approving a motion that (i) identifies the subject matter, (ii) states the purpose of the meeting and (iii) makes specific reference to the applicable exemption from the open meeting requirements provided in § 2.2-3707 or subsection A of § 2.2-3711. The matters contained in such motion shall be set forth in detail in the minutes of the open meeting. A general reference to the provisions of this chapter, the authorized exemptions from open meeting requirements, or the subject matter of the closed meeting shall not be sufficient to satisfy the requirements for holding a closed meeting.

The minutes of the two public bodies state that the members of both bodies voted unanimously to convene in a closed meeting "pursuant to § 2.2-3711(A)(5) Code of Virginia, 1950, for discussion concerning a prospective business or industry." The minutes of both public bodies are identical in referring to the purpose for the closed meeting. The minutes do not contain anything else to explain or justify the purpose for the closed meeting.

It is this Court's conclusion that neither pubic body followed the necessary procedural requirements of the Act in convening the closed meeting. The Authority and the Board of Supervisors contend that, had additional information been provided in the open meeting to explain or justify the reason for the closed meeting, i.e., to discuss O'Gara or a proposed security school, such information would have adversely affected the potential business opportunity. Such reasoning ignores the express language of the Act and would render its requirements meaningless. What is contained in the minutes of the two public bodies is precisely what is expressly prohibited. "A general reference to the provisions of this chapter, the authorized exemptions from open meeting requirements, or the subject matter of the closed meeting shall *not* be sufficient to satisfy the requirements for a closed meeting." § 2.2-3712(A) of the Act (emphasis added).

The plaintiffs also contend that the Board and the Authority improperly invoked § 2.2-3711(A)(5) as the justification for the closed meeting. Section 2.2-3711(A)(5) permits a closed meeting where the purpose is to discuss a "prospective business . . . where no previous announcement has been made of the business' . . . interest in locating . . . in the community." Plaintiffs argue that, on January 9, 2009, employees of O'Gara met with several landowners who owned property adjacent to the proposed training facility. The January 9, 2009, meeting was described by O'Gara's president as "informational" and to explain to O'Gara's direct neighbors the purpose of the school and nature of the facility. Mr. Noe, O'Gara's president, testified that he knew the meeting with the Authority was coming up and the "idea was to try and announce to our direct neighbors our proposed use for the property." While O'Gara's president used the word "announce" during his January 9, 2009, meeting, the use of the word "announce" by Mr. Noe, standing alone, does not constitute a "previous announcement" within the meaning of the statute. Transcript, p. 58. There was no evidence that any member of the Board of Supervisors or the Industrial Development Authority attended the January 9th meeting or that any member was aware that the meeting occurred.

There is no argument that the O'Gara training facility was a "prospective business" that had no presence in Westmoreland County as of January 12, 2009. The contention of the plaintiffs is that the January 9, 2009, meeting between O'Gara's president and a small number of adjacent landowners constituted a "previous announcement" of the prospective business which then precluded the Board and Authority to invoke § 2.2-3711(A)(5) as the purpose for the closed meeting. The Court declines to accept that argument.

There are no cases that specifically address what constitutes a "previous announcement" under the Act. It is this Court's conclusion that the correct interpretation of a "previous announcement" under the statute is an announcement either to or by the public body and which results in or demonstrates that the members of the public body have some knowledge of the business opportunity apart from what is learned in the closed meeting. Otherwise, a public body's ability to consider a new business opportunity in a closed meeting would be governed by the actions of others not affiliated with the public body. For example, assume a private citizen learns that a business is interested in coming to a particular community. Assume further that the private citizen is opposed to the business and, in advance of the meeting where the public body is scheduled to consider the prospective business in a closed session, the person places an ad in the community newspaper to "announce" the business' interest in locating in the community. Under the plaintiffs' construction of § 2.2-3711(A)(5), once the ad was published, the public body would not be able to discuss that

business opportunity in a closed meeting even though the members of the public body had no information about the prospective business.

Here, there was no evidence that any member of either public body was involved in any public activity or had prior knowledge of the proposed O'Gara Training Facility before the January 12, 2009, meeting. On the contrary, the chairman of the Authority testified at trial that neither he nor any member of the Authority knew anything about the O'Gara project before the January 12th meeting. Testimony of James W. Latane, Jr., Transcript p. 172. Accordingly, it is my conclusion that, although the procedures to convene a closed meeting were not followed, the invocation of § 2.2-3711(A)(5) as the basis for the closed meeting is not a separate violation of the Act.

The plaintiffs further contend that Mr. Fink, the zoning administrator, violated the Freedom of Information Act when he did not timely respond to a document request by the plaintiffs. Under the Act, a public body must respond to a request within five working days in one of the following ways: produce the requested records, request additional time for a response, object to the request, or respond that the records do not exist. Section 2.2-3704(B).

On June 9, 2009, Mr. Fink was asked to produce a copy of a "letter of compliance" referenced in the contract between O'Gara and the Authority. The contract between O'Gara and the Authority for the purchase of the shell building and 25 acres made reference to a "letter of compliance" that O'Gara could request from the zoning administrator that the proposed use of the property was permissible under the Westmoreland County Zoning Ordinance. There was no answer from Fink, and the plaintiffs renewed their request on July 7, 2009. On August 12, 2009, the county attorney responded by letter stating no letter of compliance existed. O'Gara chose not to request a letter of compliance from the zoning administrator, so no letter was ever written.

It was never contested that the zoning administrator did not timely respond to the request. At trial, the county attorney acknowledged the violation.

### Remedy for the FOIA Violations

The Court has found that the Board of Supervisors and the Authority did not comply with FOIA when the two bodies failed to comply with § 2-2-3712(A) when they met in the closed meeting on January 12, 2009. The Court has also found the zoning administrator violated § 2.2-3704(B) by not timely responding to the June 9, 2009, request for the letter of compliance.

Section 2.2-3713(D) of FOIA permits the recovery of reasonable costs and attorney's fees from the public body if a plaintiff substantially prevails on the merits of the case, unless special circumstances would make an award unjust. *Fenter v. Norfolk Airport Auth.*, 274 Va. 524, 532, 649

S.E.2d 704 (2007). This Court finds that the plaintiffs have substantially prevailed on their FOIA claims, and there are no special circumstances advanced by the defendants that would make an award of costs and fees unjust.

As to a request for injunctive relief, the Court declines to enter an injunction under the facts of this case. No evidence was presented that either public body or the zoning administrator had previously or subsequently failed to comply with the requirements under FOIA or that these violations were other than isolated incidents. *Nageotte v. King George County*, 223 Va. 259, 270, 288 S.E.2d 423 (1982). Injunctive relief should not be granted unless the Court finds the violations "willful, knowing, and substantial." *Hale v. Washington County School Bd.*, 241 Va. 76, 81, 400 S.E.2d 175 (1991). No such finding can be made on this record.

Plaintiffs also request civil penalties against the members of the Board of Supervisors, the Industrial Development Authority and the zoning administrator under § 2.2-3714 of FOIA. This provision permits a civil monetary penalty imposed against members of public bodies if the Court finds a violation was "willfully and knowingly made. . . ." These statutory terms were addressed in *R. F. & P. Corp. v. Little*, 247 Va. 309, 440 S.E.2d 908 (1994). There, the Supreme Court of Virginia recognized that the terms "willfully" and "knowingly" are separate and distinct and both must be proved before a penalty can be imposed under this provision. 247 Va. at 320. "Willful" conduct is intentional conduct, whereas the term "knowingly" requires proof that one is aware of the legal consequences of the prohibited conduct. 247 Va. at 320. Here, the Court finds that the members of the Board of Supervisors and the members of the Authority, based on the motion made at the January 12, 2009, meeting, intended to go into a closed meeting to discuss a prospective business. The Court finds that the action was "willfully" done. On the other hand, the Court does not find the evidence sufficient to find that the members of the two local bodies acted "knowingly" in the sense that the members knew of the legal consequences of going into a closed meeting without providing more information in the minutes. Here, there is insufficient evidence to find that the members of either body acted in a manner that would warrant the imposition of a civil penalty.

The Court also finds the evidence insufficient to award a civil penalty against Mr. Fink for not timely advising the plaintiffs that the requested "letter of compliance" did not exist.

Accordingly, the Court finds that the plaintiffs are entitled to recover reasonable costs and attorneys' fees from the two public bodies.

Case No. CL09-141

*Request for Declaratory and Injunctive Relief*

Case No. CL09-141 is against ·Mr. Fink, the zoning administrator, the Westmoreland Board of Supervisors, and the O'Gara Group, Inc. Before discussing the merits of the case, a preliminary matter must be addressed. The plaintiffs argue in their post trial brief that the defendants are in default because no answer to the complaint was filed by any defendant. The plaintiffs do not explain why this issue was raised for the first time after the trial has been concluded. To address this contention requires a brief review of the history of this case.

The plaintiffs filed their complaint for injunctive and declaratory relief after Mr. Fink approved the O'Gara Phase 1B site plan and while Mr. Fink's approval of the Phase 1A site plan was on appeal to the BZA. Mr. Fink approved the Phase 1A site plan on August 24, 2009, and the plaintiffs in this case noted an appeal of that decision on September 16, 2009. Mr. Fink approved the Phase 1B site plan on September 22, 2009. The defendants filed demurrers to the complaint in which they raised several defenses including whether the plaintiffs had standing to bring the suit. A hearing was held on March 29, 2010, to address plaintiffs' request for injunctive relief and the defendants' demurrers to the plaintiffs' standing. The Court denied the request for injunctive relief on the ground that the BZA had approved both site plan appeals in December of 2009 and that those decisions were now on appeal in the Circuit Court of Westmoreland County on writs of certiorari. The Court overruled the defendants' demurrers finding that whether plaintiffs lacked standing would not be addressed by demurrer, but based on evidence presented at trial. Order entered July 21, 2010. At a hearing on July 21, 2010, the Court consolidated the cases for a September 20 and 21, 2010, trial, substituted Mr. Bailey and Mr. Breeden as plaintiffs' counsel in Case No. CL10-06, and entered a joint pretrial order for the four cases. Case No. CL10-06 was the appeal to the Circuit Court of Westmoreland County of the approval of Phase 1B by the Board of Zoning Appeals. The July 21, 2010, Order denying the injunction and overruling the demurrers did not provide a time frame for filing further pleadings by any party.

The trial commenced on September 20, 2010. At the beginning of trial, plaintiffs' counsel requested a dismissal of Case No. CL10-06. That case was dismissed with prejudice by agreement. All parties then presented their evidence on the remaining three cases. At the conclusion of the evidence, the Court set a schedule for post trial briefs.

The fact that the defendants had not filed answers in Case No. CL09-141 was never raised before or during trial. It was first mentioned to the Court in plaintiffs' post trial memorandum. The plaintiffs contend the defendants are at fault for not asking the Court to rule on the demurrers. However, the demurrers were addressed in part on March 29, 2010, on the issue of standing. Following that hearing, all parties proceeded to trial under

a jointly prepared pretrial order without any further requests for additional hearings or raising any questions about the pleadings.

On this record, the Court finds that all parties proceeded to trial as if the parties were joined on all issues. It would be unjust at this stage of the case to do anything else other than to leave the pleadings in their present posture.

## Whether Plaintiffs Have Standing

The defendants contend that the plaintiffs lack standing to bring this action. The lack of standing is also an issue in the appeal from the BZA of the approval of the O'Gara Phase 1A site plan, Case No. CL10-05. The reasoning here is also applicable to the issue of standing in Case No. CL10-05. As previously stated, the Court overruled defendants' demurrers on this issue and stated the question of standing would be addressed based on the evidence presented at trial. At the opening of the trial, the Court reminded the parties that, since the issue of standing was contested, evidence was necessary to address the issue. Transcript, pp. 19-20.

The plaintiffs in Case No. CL09-141 and Case No. CL10-05 are the same. They are George J. Ripol, Susan Ripol, Mary Porter Hall, and Harry and Bonnie Boyden. The defendants stipulated that all plaintiffs were proper plaintiffs to bring the FOIA action (No. CL09-92) as plaintiffs in a FOIA action are in a different status from plaintiffs in a case for injunctive relief or in a BZA appeal with respect to standing. The only plaintiffs who testified at trial were George Ripol and Mary Porter Hall.

Mr. Ripol lives 1.5 miles from the O'Gara facility "by line of sight, edge to edge" or about 3 miles by car. Transcript, pp. 136, 142. Over the last year, Mr. Ripol heard what he believed was military gunfire from the direction of the O'Gara site on two or three occasions. *Id.*, pp. 137, 145. He could tell the difference between gunfire associated the military and gunfire from hunters. *Id.*, p. 144. Over a similar period of time, Mr. Ripol heard shooting which he associated with hunters "several dozen times" from property between his and the O'Gara property. *Id.*, p. 146.

Ms. Hall owns timber property adjacent to land owned by a person named Chandler, which she believes is next to the O'Gara site. *Id.*, p. 150. Her residence is northwest of the village of Montross. *Id.*, p. 159. There was no evidence how close her residence is to the O'Gara site. She occasionally visits the timber property and has never heard any gunfire from the O'Gara site. *Id.*, p. 161. Ms. Hall's concern is that O'Gara's activities may disturb nearby wildlife, the "natural habitat," and the neighbors who live near the O'Gara site. *Id.*, p. 156, 163. Neither Mr. Ripol nor Ms. Hall testified that any activity associated with the O'Gara site interfered with any right or opportunity to use their property or caused any disturbance to them personally or affected the value of their property. Although Mr. Ripol

described a difference between shooting he attributed to hunters and the military shooting he thought came from the O'Gara site, he did not testify the gunfire he believed came from the O'Gara property bothered him, upset him, made him uneasy or in any way was troublesome or interfered with or impacted on the use of his property. There was no other evidence submitted on behalf of any other plaintiff regarding any injury or denial of a property right caused or threatened by the O'Gara facility.

The concept of standing is founded upon the principle that the parties to a lawsuit must have a sufficient interest in a particular matter to ensure the parties will be actual adversaries and that the issues in the case will be fully and faithfully developed. *Andrews v. American Health & Life Ins. Co.*, 236 Va. 221, 226, 372 S.E.2d 399 (1988). The inquiry has no relation to the substantive merits of the controversy, but is a preliminary jurisdictional matter that focuses solely on the status of the plaintiff or plaintiffs and whether they are the proper parties to proceed with the suit. *Cupp v. Board of Supervisors of Fairfax County*, 227 Va. 580, 589, 318 S.E.2d 407, (1984). In order to have standing, a party "must show that he has an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest." *Nicholas v. Lawrence*, 161 Va. 589, 592, 171 S.E. 673 (1933). The type of interest or injury necessary to have standing must be one directly affecting the plaintiff. "[I]t is not sufficient that the sole interest of the [plaintiff] is to advance some perceived public right or to redress some anticipated public injury where the only wrong [the plaintiff] has suffered is in common with other persons similarly situated." *Virginia Beach Beautification Commission v. Board of Zoning Appeals of the City of Virginia Beach*, 231 Va. 415, 419, 344 S.E.2d 899 (1986).

The issue of standing arose in *Riverview Farm Associates v. Board of Supervisors*, 259 Va. 419, 528 S.E.2d 99 (2000). The plaintiffs challenged a conditional rezoning application. The plaintiffs owned property within 2,000 feet of the rezoned property and contended that the rezoning approval would result in increased truck traffic and would adversely impact their property by "trucking noise, litter, dust, odors, and exposure to disease from garbage unloaded" onto adjacent property. 259 Va. at 422-24. The Supreme Court held this was sufficient to have standing to challenge the rezoning decision. In *Cupp v. Board of Supervisors*, 227 Va. 580, 318 S.E.2d 407 (1984), the Supreme Court stated that the "point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." 227 Va. at 589. In *Cupp*, the Court held that a business owner had standing to challenge an ordinance that would curtail what products could be sold in his business.

Applying these principles to the facts of this case and upon considering all the evidence, the Court concludes that none of the plaintiffs have proven they have sufficient standing to bring a suit for declaratory

or injunctive relief, nor are any of the plaintiffs a "person aggrieved" and thereby entitled to appeal a decision from a board of zoning appeals. The plaintiffs have not presented sufficient evidence that they have suffered any injury to them as a result of the presence of the O'Gara facility or that any use or enjoyment of their property is or may be adversely impacted by the activities of the O'Gara school.

### Entitlement to Injunctive or Declaratory Relief in Case No. CL09-141

This Court recognizes that there may be an appeal of this case. In the event of an appeal, this Court will proceed to also address the substance of the plaintiffs' claim in the event the Supreme Court finds that one or more of the plaintiffs has standing in this case.

This claim arises out of Mr. Fink's approval of the O'Gara Phase 1B site plan at a time when Mr. Fink's prior approval of O'Gara's Phase 1A site plan was on appeal to the Westmoreland BZA. The plaintiffs contend that the zoning administrator's approval of the Phase 1B site plan on September 22, 2009, violated Virginia Code § 15.2-2311(B):

An appeal shall stay all proceedings in furtherance of the action appealed from unless the zoning administrator certifies to the board that, by reason of facts stated in the certificate, a stay would in his opinion cause imminent peril to life or property, in which case proceedings shall not be stayed otherwise than by a restraining order granted by the board or by a court of record, on application and on notice to the zoning administrator and for good cause shown.

The purpose of this statute is to maintain the status quo of a zoning administrator's decision while the decision is before the Board of Zoning Appeals. In *Wahrhaftig v. Artman*, 73 Va. Cir. 37 (2007), the case principally relied on by the plaintiffs, Judge Thomas Horne held that this statute authorized injunctive relief against property owners who commenced construction of several buildings following the issuance of zoning permits by the zoning administrator, but which permits had been appealed to the Loudoun County Board of Zoning Appeals.

The facts in this case are different from those in *Wahrhaftig*. Here, there is no contention that O'Gara commenced any construction or undertook any activity with regard to the office or classroom buildings or other parts of the Phase 1A site plan after the appeal was filed with the Westmoreland BZA. The Phase 1B site involved the proposed construction of three firing ranges that would be used in conjunction with the training facility. The two site plans dealt with separate and distinct components of

the facility. The stay provisions of § 15.2-2311(B) apply to "proceedings" that are in "furtherance of the action appealed from. . . ." Here, the appeal was to the Phase 1A site plan. The zoning administrator's approval of a related but separate site plan while Phase 1A was on appeal was not an act that was in "furtherance" of the "action appealed from," in this case, the approval of Phase 1A.

Another reason why the plaintiffs are not entitled to relief is that the zoning administrator's approvals of Phase 1A and 1B were affirmed by the Westmoreland BZA in December of 2009. The BZA decisions came before this Court on writs of certiorari. The stay provisions of § 15.2-2311(B) are applicable while a matter is on appeal to the BZA. Any stay that arguably could have been entered would have been dissolved in December of 2009 once the BZA approved Phase 1A.

Finally, the zoning administrator's approval of the Phase 1B site plan is no longer a reviewable matter. The plaintiffs in Case No. CL10-06 withdrew their appeal of the BZA's approval of Phase 1B. Thus, the zoning administrator's approval of Phase 1B is no longer a matter in dispute.

For these reasons, the Court concludes the plaintiffs are not entitled to injunctive or declaratory relief. The case of CL09-141 is dismissed in all respects on the ground that the plaintiffs lack standing to bring the action. Alternatively, assuming the plaintiffs have standing to sue, they have not shown they are entitled to any relief.

*Writ of Certiorari to Board of Zoning Appeals Case No. CL10-05*

This case is the appeal of the BZA decision approving the O'Gara Phase 1A site plan. The defendants are the Westmoreland Board of Zoning Appeals and the O'Gara Group, Inc. The plaintiffs are identical to those in Case No. CL09-141. The defendants contend that none of the plaintiffs have standing to bring this suit.

Plaintiffs contend that the BZA "ruled" that the plaintiffs had "standing" to bring the appeal to the BZA and, since the BZA did not file a "cross-claim or appeal," this Court may not now address the issue. No authority is cited in support of this argument, and it is not accepted by this Court. The BZA did not address the issue, rather it assumed the plaintiffs were proper parties to present the appeal.

Section 15.2-2314 of the Virginia Code allows any person "aggrieved by any decision of the board of zoning appeals . . ." to file a petition in the Circuit Court to review a board of zoning appeals decision. In this Opinion discussing Case No. CL09-141, the Court has found, based on the evidence presented, the plaintiffs lack sufficient standing to pursue their claim of injunctive and declaratory relief. There is no need to repeat what has been said on standing as the reasoning and analysis is the same

and is incorporated herein. None of the plaintiffs have shown they were sufficiently "aggrieved," and therefore they lack standing to bring this case.

However, since this case may be appealed and the Supreme Court of Virginia may find one or more of the plaintiffs do have standing, this Court will address the merits of the plaintiffs' case.

### Plaintiffs' Appeal Is Not Time Barred

The BZA and O'Gara contend that the plaintiffs failed to timely pursue a 2008 decision of the Westmoreland zoning administrator that precludes these plaintiffs from challenging the August 24, 2009, zoning administrator's approval of the O'Gara Phase 1A site plan. Defendants' argument requires a brief recitation of facts underlying this contention.

Sometime in 2008, O'Gara became interested in opening a training academy in Westmoreland County. O'Gara operated a similar school in Danville, Virginia. Transcript, p. 67. O'Gara asked Mr. Gary Ziegler, then the Westmoreland zoning administrator, whether a training facility and academy was a "school" and therefore a permitted use in the A-1 (Agriculture) District under the Westmoreland County Zoning Ordinance. Section 2-13 of the Westmoreland County Zoning Ordinance lists "Schools" as a permitted use in the A-1 district. At the time the request was made, O'Gara had not contracted to purchase either the 350 acre parcel from the Chandler family or the 25 acre parcel and shell building from the Westmoreland Industrial Development Authority. On September 17, 2008, Mr. Ziegler wrote a memorandum where he stated that a private military type training facility with classroom instruction was a "school" within the A-1 Agricultural District and therefore a permitted use. Mr. Ziegler died sometime thereafter, and Mr. Robert Fink became the Westmoreland zoning administrator. What became known as the "Ziegler memorandum" did not refer to or identify O'Gara. The evidence at trial was insufficient for the Court to find when these plaintiffs or anyone else not named in the memorandum learned of its existence. O'Gara received a copy of the Ziegler memorandum from the Westmoreland County Attorney in October of 2008. O'Gara's president testified that he relied on the memorandum when he entered into contracts to purchase the Chandler property and the property owned by the Authority.

Defendants argue that the Ziegler memorandum was a "decision" of the zoning administrator under Va. Code § 15.2-2311(A) and could have been appealed to the BZA. At trial, there was a reference that an appeal of the Ziegler memorandum may have been filed with the Westmoreland BZA at some time and that it may have been later withdrawn. However, the record was not sufficiently clear what occurred; so this Court does not give this any consideration. Defendants argue in the alternative that the Ziegler memorandum became conclusive and not subject to change under Va. Code

§ 15.2-2311(C) when more than sixty days had elapsed and O'Gara had materially changed its position in good faith reliance on the memorandum. The Court declines to accept either contention and finds the plaintiffs' appeal of the Phase 1A site plan approved by Mr. Fink was timely made and is not barred by the § 15.2-2311(A) or(C).

Defendants contend that the September 2008 Ziegler memorandum became a "thing decided" once no one appealed the matter within thirty days relying on *Dick Kelly Enterprises v. City of Norfolk*, 243 Va. 373, 416 S.E.2d 680 (1992). Appeals to a board of zoning appeals must be taken within thirty days. Section 15-2-2311(A). In *Dick Kelly Enterprises*, a landowner was notified by the Norfolk zoning administrator that its operation of an apartment building was in violation of the City of Norfolk's zoning ordinance. The landowner did not appeal the zoning administrator's decision to the Norfolk BZA. In an action by the City of Norfolk to enjoin the zoning violation, the defendant asserted several defenses including a claim he had a vested right to use the property as an apartment building. The Supreme Court held that the defendant could not assert that defense as that matter had become a "thing decided" when the landowner failed to pursue his administrative appeal to the Norfolk BZA. 243 Va. at 379.

Unlike the landowner in *Dick Kelly Enterprises*, the Ziegler memorandum was not directed to the plaintiffs in this case nor was there any evidence that any of these plaintiffs knew about the Ziegler memorandum until well after the time to note an appeal to the BZA had expired. A more instructive case is *Lilly v. Caroline County*, 259 Va. 291, 526 S.E.2d 743 (2000). There, the Caroline County zoning administrator was asked whether the Caroline County zoning ordinance would allow the construction of a tower and radio station. The applicant was told that it was likely the tower was a permitted use, but the station would require an amendment to the zoning ordinance. Following the filing of site plans for the tower and station, the matter was the subject of several public hearings before the planning commission and board of supervisors. During those meetings, Mr. Lilly spoke in opposition to the tower construction. At one planning commission meeting, the zoning administrator said that the tower was a "by-right" permitted use. During a subsequent board of supervisors meeting attended by Mr. Lilly, the zoning administrator stated again that the tower was a "by-right use" and further stated that his ruling could be appealed to the board of zoning appeals. 259 Va. at 295-96. Mr. Lilly did not file an appeal to the BZA. The trial court found that the statement by the zoning administrator at the board of supervisors meeting was a "decision" that was communicated to Mr. Lilly, that Mr. Lilly had notice of the decision, and that Mr. Lilly was aware that the zoning administrator's decision could be appealed to BZA. On these facts, the Supreme Court affirmed the trial court's dismissal of Mr. Lilly's declaratory judgment action against the county finding that Lilly had

failed to exhaust his administrative remedy by not appealing the matter to the BZA. 259 Va. at 298.

In this case, there is no evidence that the Ziegler memorandum was known to any of the plaintiffs until well after thirty days had elapsed. Fundamental fairness requires that someone who is charged with a failure to exhaust an administrative remedy have notice that a decision has been made that is subject to an appeal. In this Court's view, the underlying purpose of § 15.2-2311(A) is to provide an orderly process to allow persons "aggrieved" by a zoning administrator's decision the opportunity to have the matter reviewed by a board of zoning appeals. Furthermore, § 15.2-2311(A) requires that any notice of a zoning violation or the content of a written order of a zoning administrator include a statement informing the recipient of a right to appeal within thirty days and that the decision would be final if no appeal were filed.

Nor does this Court believe that § 15.2-2311(C) renders the plaintiffs' appeal of the Phases 1A site plan approval as untimely. That section provides that a zoning administrator's decision may not be changed once sixty days have elapsed "where the person aggrieved" has materially changed his position in reliance on the zoning administrator's decision. Defendants cite no case in which this section has been applied to bar an appeal of a zoning administrator's decision. The language of the statute makes it clear that this provision grants a person who is "aggrieved" the right to assert this provision as a defense to a change or modification by the zoning administrator where the person has relied on a prior decision. It is arguable that O'Gara could have raised this issue if Mr. Fink ruled in August of 2009 that the training facility was not a school and therefore not a permitted use in an A-1 district after O'Gara received the Ziegler memorandum in October of 2008. But that is not the case here. This provision affords a remedy to one who may have relied on a zoning administrator's decision, but it does not prevent a person from filing an appeal of a zoning administrator's decision to a board of zoning appeals.

*Board of Zoning Appeals Decision Regarding Phase 1A*

The final issue to consider is whether the BZA was correct in approving the Phase 1A site plan as a "school," a permitted use, in the A-1 Agricultural District under the Westmoreland County Zoning Ordinance. The record of the BZA and the testimony of Mr. Fink at trial made it clear that the BZA and Mr. Fink made independent determinations that the Phase 1A site plan was a permitted use within the A-1 district. While each may have considered the Ziegler memorandum in their determinations, the evidence was that each found the O'Gara training facility a permitted use in the A-1 district independently of the Ziegler memorandum. The O'Gara

Phase 1A site plan submitted to the zoning administrator and approved by the BZA contained the following statement:

> *Proposed Use.* A training facility and academy constructed in phases. Phase 1A to be classroom and office buildings for the instruction in solutions to support homeland security, counter-terrorism, and low intensity conflict. The students will be local, state, and federal law enforcement, governmental agencies and their support personnel refining their skills that are critical to national defense. Examples of courses include emergency response planning, pandemic (public health) response, continuity of operations (coop) planning, pre-deployment training, force protection, close quarter battles (cqb), counter-surveillance operations, threat and vulnerability assessment, and security assessment and mitigation.
>
> The site will also include associated restrooms, parking area, walkways, flag pole (1) security pole light, and gravel access road. It is anticipated that the one-story class room and office buildings will be similar in construction to modular public school classrooms or stick-built. Foundations will be of masonry construction. . . .
>
> Phase 1B of the training facility and academy to be three (3) firearm ranges, and Phase 2 to be a driving course.
>
> Hours of operation are 8:00 a.m. to 5:00 p.m. Monday through Friday with limited night use.

Before discussing the merits of plaintiffs' contention that the Westmoreland BZA decision was in error, it is worth reviewing certain well established principles. Under Virginia Code § 15.2-2314, in an appeal from a board of zoning appeals, "the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct. The appealing party may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision." In this case, there are little if any disputed questions of fact. The core issue is whether the BZA was correct in finding the O'Gara Training Facility was a "school" under the Westmoreland Zoning Ordinance. That is a question of law, not fact, and thus the Court must make its own determination in light of all the provisions of the Westmoreland Zoning Ordinance. The standard of review of a BZA decision by a circuit court has been changed. The former standard was that a BZA decision could be reversed only if the circuit court determined the BZA applied erroneous principles of law or was "plainly wrong." *Foster v. Geller*, 248 Va. 563, 566, 449 S.E.2d 802 (1994). Under current § 15.2-2314, the court is to hear arguments on questions of law "de

novo." *W & W Partnership v. Prince William County BZA*, 279 Va. 483, 689 S.E.2d 739 (2010).

Provisions of the Westmoreland County Zoning Ordinance that are relevant to this case include § 1-3.2, which provides that, subject to the zoning administrator's interpretive powers under the ordinance, no use is permitted unless included in a district use list. Further, § 1-3.8 provides that, in the event of a dispute over the meaning of a word, whether defined or not, the zoning administrator is authorized to make a "definitive determination" thereof, provided he is guided by the general purposes and intent of the ordinance. Section 2-13 designates what is an Agricultural District. Section 2-13.1 provides that areas in the Agricultural District are primarily for farming and that the district is established to protect existing and future agricultural activities. Among the many specific named uses permitted in the A-1 District are "schools." Finally, § 12-1 contains definitions of words and terms used in the ordinance including definitions of certain types of schools.

The Phase 1A site plan included a classroom, restrooms, and office buildings to be used by students from various governmental agencies for training and instruction in a variety of subjects related to national security and counter-terrorism matters. The Phase 1A site plan lists the types of instruction that would be given to the students. In contrast to the Phase 1A site plan, the application for the Phase 1B site plan was for three firing ranges that would be used by the O'Gara training facility. The BZA approved the zoning administrator's finding that the classroom and instructional aspects of the O'Gara training facility in Phase 1A was a "school" as that term is used in Section 2.13.2.33 of the ordinance and therefore a permitted use. The BZA approval of Phase 1B, the plan for three firing ranges, was initially appealed to this Court and was consolidated for trial with this appeal. However, that appeal was withdrawn, so the site plan for Phase 1B for the firing ranges stands approved and unchallenged.

That is important because one of the major arguments of the plaintiffs is that the O'Gara training academy cannot be a "school" under the zoning ordinance because schools do not use firing ranges as part of an academic setting nor would the use of firing ranges be consistent with the agricultural and farming aspects of the A-1 Agricultural district. However, firing ranges were not part of the Phase 1A site plan. The record of the BZA indicates the two plans were discussed together, with one member suggesting that firing ranges might be "ancillary" to the training academy. BZA transcript, p. 36. However, since the firing ranges were part of a separate site plan and not part of this appeal, the presence of firing ranges in another site plan cannot be a basis to rule that the classroom and instructional aspects of Phase 1A do not constitute a "school" under the zoning ordinance.

The plaintiffs also rely on the definitions of several types of schools in Article 12-1 of the ordinance. Article 12 contains a number of

definitions, including those for "School, General Education (non-public), School, Elementary, School, Middle, School, High, School, Public, School, Commercial or special instruction, and School, Technical." Plaintiffs argue that the O'Gara training academy must fit within one of those definitions, and the only ones that arguably apply are those referring to technical, commercial, or a special instruction schools. However, nowhere in the zoning ordinance does it state that a "school" under § 2-13.1 must be one of those described in Article 12-1. The zoning administrator did not construe the ordinance in that manner. He concluded that the training facility with classroom and office buildings providing instruction in security and counter-terrorism subjects was a school and consistent with the intent and general purposes of the ordinance.

The purpose of a school is for the education, training, and instruction of students. That is the stated purpose for the O'Gara training facility. The fact that the subjects to be taught deal with national security and counter-terrorism subjects does not mean that the facility is not a school. It is the Court's conclusion that the zoning administrator and the BZA correctly concluded that the O'Gara training facility as described in the Phase 1A site plan was a school within the meaning of the Westmoreland County Zoning Ordinance.

## *Conclusion*

For the reasons stated, the Court finds that the plaintiffs have proven a FOIA violation by the Westmoreland County Board of Supervisors, by the Westmoreland Industrial Development Authority, and by the zoning administrator. The plaintiffs are entitled to recover reasonable costs and attorneys' fees incurred in Case No. CL09-92.

The Court further finds that the plaintiffs lack standing to assert claims for injunctive and declaratory relief in Case No. CL09-141 nor are the plaintiffs "aggrieved" and entitled to appeal the BZA decision in Case No. CL10-05. Alternatively, assuming the plaintiffs have standing, the Court finds the plaintiffs are not entitled to injunctive or declaratory relief in Case No. CL09-141. Finally, assuming the plaintiffs were "aggrieved" and entitled to appeal the BZA decision in Case No. CL10-05, the Court finds the BZA decision was correct.

The plaintiffs shall submit a statement and an affidavit of costs and fees incurred in the FOIA case. Defendants shall have ten days to respond to the plaintiffs' submission. The Court will rule on the award of fees and costs based on the submissions unless a hearing is necessary. The entry of a final Order will await the Court's decision on fees and costs.