DICK KELLY ENTERPRISES,
VIRGINIA PARTNERSHIP, #11, ET AL.

V.

CITY OF NORFOLK

Record No. 910936

April 17, 1992

Present: All the Justices

*William F. Devine (Robert C. Nusbaum; Thomas F. McPhaul; Hofheimer, Nusbaum, McPhaul & Samuels*, on briefs), for appellants.

*Norman A. Thomas, Deputy City Attorney (Philip R. Trapani, City Attorney; Cynthia B. Hall, Assistant City Attorney*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this injunction suit brought by a municipal corporation to enforce its zoning ordinance and building code against the unlawful use of property, the landowner's failure to pursue an available administrative remedy at the inception of the controversy pervades the entire case.

In September 1983, appellants Richard M. Kelly and Richard M. Kelly, Jr., organized appellant Dick Kelly Enterprises, Virginia Partnership, #11, a general partnership, with the senior Kelly as the managing partner. In December 1983, the partnership purchased property that is the subject of this dispute, 9508 29th Bay Street, located in the East Ocean View section of the City of Norfolk, the appellee.

In December 1983, the landowner applied for and received from the City a building permit and zoning clearance for the subject property. The application stated an intention to erect a three-story, 42-unit motel. In December 1984, the landowner applied for and received from the City a certificate of occupancy for the property; the certificate specified the use of the property to be a three-story, 42-unit motel.

The landowner did not use the property as a motel. Instead, the property has been used since its initial occupancy as an apartment building, that is, for long-term tenant occupancy as opposed to rental to transients by the day or week.

On August 3, 1990, the City's zoning administrator notified the landowner by letter of certain "zoning and building code violations at the subject property." Pointing out that the property is located in a "BFR: Bay Front Residential District," the administrator wrote that "we have learned that for a period in excess of two years you have used it as a forty-two (42) unit apartment complex" rather than as a 42-unit motel.

The administrator further stated that the subject property's use "is inconsistent with the use approved in the Certificate of Occupancy, violates Section 904 of the zoning ordinance and Sections 112 and 115 of the building code." In addition, the administrator wrote, the use of the property "violates the area, parking, and other BFR district regulations."

The letter further stated: "You hereby are directed to immediately and permanently cease and desist from using the subject property as an apartment complex; and you shall not commence any further use of the property until you have applied for and received from the City of Norfolk a new Certificate of Occupancy." The letter concluded: "We ask that you respond to us regarding this letter on or before Friday, August 17, 1990, so that we may know your intentions in this matter."

The landowner did not appeal to the Board of Zoning Appeals of the City of Norfolk (BZA) any of the zoning administrator's determinations or directives contained in the August 3 letter. The landowner refuses to comply with the terms of the letter and the City filed the present suit in October 1990 naming the partnership and the two partners as defendants.

In the bill of complaint, the City set forth the foregoing facts, about which there is no dispute. In the prayer to the bill, the City sought a permanent injunction, (1) requiring the landowner to cease and desist from using the property as an apartment complex, and (2) prohibiting the landowner from any further use of the property until such time as the landowner applies for and receives a new certificate of occupancy.

Responding, the individual defendants filed a demurrer asserting that they "are but partners in the partnership which owns the property in question, and, as such, should not be named individually in this suit or in any order which may be entered herein." The partnership filed an answer that included a set of allegations which it labelled "affirmative defenses."

Based on these "affirmative defenses," the partnership asked for a decree granting the following relief: a declaration that it has "a fully vested and indefeasible right" to continue the use of the property as it has been used since the issuance of the 1984 certificate of occupancy; a declaration that the City is not entitled to equitable relief due to laches, estoppel, unclean hands, and waiver; and a declaration that the City's prosecution of the suit violates the partnership's constitutional rights. In support of its constitu-

tional argument, the partnership asserted that the City "is engaged in intentional and purposeful selective, vindictive, and retaliatory prosecution of the Partnership."

In December 1990, the City filed a motion for summary judgment against the partnership. Reciting the undisputed facts surrounding the controversy and the defendants' responses to certain discovery requests, the City asserted that it was entitled to relief because there was no material fact genuinely in dispute and because the "purported affirmative defenses alleged by the defendant in its Answer to the City's Bill of Complaint are either barred or inapplicable to this case, or both." The City also filed a motion for a protective order asking that it not be required to respond to certain discovery requests made by the defendants until such time as the trial court finally disposed of the motion for summary judgment.

The chancellor considered the argument of counsel who addressed the issues during two hearings. In a February 1991 decree entered following one hearing, the trial court granted the motion for a protective order and granted partial summary judgment denying the defenses of vested rights, laches, estoppel, unclean hands, and waiver. In March 1991 decrees, entered following the other hearing, the trial court overruled the demurrer, allowed the individual defendants to adopt as their answer the answer of the partnership, allowed the City to file a motion for summary judgment against the individual defendants identical to that filed against the partnership, and granted the City's motions for summary judgment against each of the defendants. Following the second hearing, the court specifically denied the "affirmative defense" of "retaliatory prosecution." The trial court then entered a permanent injunction ordering the relief requested by the City in the prayer of its bill of complaint. The defendants (collectively, the landowner) appeal.

As we have said, the landowner's decision not to pursue an available administrative remedy, that is, an appeal to the BZA from the zoning administrator's decision, pervades the entire case. *See* Code § 15.1-495(3) (BZA empowered: "To hear and decide appeals from the decision of the zoning administrator") and Code § 15.1-496.1 (appeal shall be taken within 30 days after decision appealed from). This is because of the settled principles most recently set forth in *Gwinn* v. *Alward*, 235 Va. 616, 369 S.E.2d 410 (1988), which have direct application to this controversy.

In *Gwinn*, a landowner filed suit against a county board of supervisors to compel issuance of a trash-hauling permit. In a cross-bill, the board and the county zoning administrator alleged that the landowner was in violation of the zoning ordinance because he maintained a junk yard on the subject property and parked trash-collection trucks there. The county officials requested an injunction against these violations. Responding to the cross-bill, the landowner raised the defenses of unclean hands and estoppel. The trial court denied the landowner the relief he sought and refused to grant the injunction.

The sole issue on appeal was whether the injunction should have been granted. The record showed that the landowner had received a trash-collection permit, in connection with his business operation from the property, each year for approximately 30 years until July 1984, when his permit application was denied. The record also showed that during 1984 the landowner received letters from the zoning administrator citing him for violation of the zoning ordinance because he was operating a junk yard and was parking operable trash trucks on the land. The landowner did not correct these violations nor did he pursue any administrative relief.

■ Reversing the trial court, we held that the injunction should have been issued. We stated that the zoning administrator's decision that the landowner "was operating a junk yard and parking operable trash trucks on the property in violation of the zoning ordinance was a thing decided and was not subject to attack" by the landowner. *Id.* at 621, 369 S.E.2d at 412. The reason for this conclusion, we said, was because the landowner "never appealed the various decisions in which he was declared in violation of the zoning ordinance." *Id.* This conclusion stems from the settled rule that exhaustion of administrative remedies where zoning ordinances are involved is essential before a judicial attack may be mounted against the interpretation of such ordinances. *See Phillips* v. *Telum, Inc.*, 223 Va. 585, 590, 292 S.E.2d 311, 314 (1982); *Gayton Triangle* v. *Henrico County*, 216 Va. 764, 766-67, 222 S.E.2d 570, 572 (1976).

■ Also, in *Gwinn* we found the equitable defenses inapplicable, stating that estoppel "does not apply to the government in the discharge of governmental functions." *Gwinn*, 235 Va. at 621, 368 S.E.2d at 413. We concluded by observing that as long as the zoning administrator "makes clear the basis upon which relief is sought" when rendering a decision, and when the proof at trial is

sufficient, the government is entitled to relief. *Id.* at 622, 369 S.E.2d at 413.

■ In the present case, the analysis necessarily begins with the proposition that the landowner's use of the subject property was unlawful from the moment of occupancy and remains so. This is "a thing decided" and is not subject to attack by the landowner as the result of its election not to appeal the August 3 decision by the zoning administrator. The landowner had the opportunity, as a matter of right, to appeal to the BZA and then to the circuit court and, in the process, to raise every challenge it now makes to the City's interpretation of its ordinances. Instead, the landowner elected to ignore the required procedure and to make this direct judicial attack when confronted with an enforcement action.

■ In addition, the administrator's letter made "clear" the basis upon which relief was sought. Contrary to the contentions of the landowner, there was no duty on the administrator to give the recipient of the letter legal advice and to "inform Kelly of its rights to appeal these matters, or of the alleged permanence of these 'determinations' in the event Kelly did not appeal;" nor did the request for a reply made at the conclusion of the letter detract from its force as a decision.

Confronted with this insurmountable hurdle of an unlawful use as "a thing decided" not open to attack, the landowner nevertheless contends on appeal that the trial court erred in entering summary judgment, erred in not applying the equitable defenses, erred in limiting discovery, erred in its constitutional ruling, and erred in overruling the demurrer. Few of these contentions merit any detailed discussion.

In the trial court and on appeal, the landowner built its defense on the complaint of unfair and oppressive treatment at the hands of the City. The landowner says that in the late 1970s and early 1980s, the City was rehabilitating a dilapidated downtown neighborhood and that this effort caused displacement of a substantial amount of the City's low-income housing. According to the landowner, the City sought to direct much of this housing to the bay-area East Ocean View section, and "induced" Kelly and other private developers to undertake high density residential projects there. The landowner says that the subject property was an integral part of several Kelly projects in the area containing apartment units. According to the landowner, the City recognized the developer's need to obtain sufficient density to support the expense

of the "infrastructure (i.e. roads, gutters, curbs, utilities, etc.) required for residential use."

The landowner states that when Kelly submitted development plans in 1983 for the property as an apartment project, it contained too many units for apartment development under the then-existing zoning ordinance for the district. The landowner says: "At the City's suggestion, Kelly modified the plans by 'whiting out' the word APARTMENT, and substituting the word MOTEL." No other modifications to the plans were made, according to the landowner, and the City issued the December 1983 building permit. The landowner says that the City was not misled in any way by Kelly's submission of the plans and the operation of the project, which it says "has been run as an apartment since it opened in December, 1984"; this is because, other than the word MOTEL on the plans, there is nothing to suggest, from the design or appearance of the structure, that the project would be operated as anything other than an apartment complex.

Continuing, the landowner alleges that Kelly's operation of the property has been fully consistent with the City's long-standing interpretation and enforcement of its codes and ordinances relating to motels, and that the property "is one of many 'motels' operating as apartments in East Ocean View and elsewhere in the City."

Additionally, the landowner alleges that in the mid-1980s, because of a land use study and "political pressure," the City revised its interpretation of the applicable regulations and, in 1987, rezoned all of Ocean View. It says that motels are no longer permitted in the new BFR district and that permissible apartment densities have decreased "dramatically."

After this down-zoning, the landowner charges, and due to falling property values, Kelly and other owners of income-producing properties in the Ocean View section began to seek reduction of the real estate tax assessments for their property. The landowner asserts that as a direct result of Kelly's tax-assessment challenge, and as a result of the City's altered interpretation of its ordinances and its determination to reduce densities at Ocean View "at any expense," the City set out to punish Kelly and to "drive Kelly out of business" so that the City, or the Norfolk Redevelopment and Housing Authority, can acquire the subject property "to further the City's new agenda in Ocean View." The landowner charges that Kelly has been singled out "to send a message to

property owners that assessment challenges would not be tolerated lightly."

■ Turning to the appellate issues, we will first dispose of the summary judgment and equitable defenses questions. According to established equity practice and procedure, a chancellor may enter summary judgment when there is no material fact genuinely in dispute. Rule 2:21. As we have said, there was no dispute about any of the facts asserted by the City to support its request for injunctive relief; the fact that a zoning violation was occurring had been determined at the inception of the controversy. Thus, the City was entitled, as a matter of law, to have the violations set forth in the August 3 letter "restrained, corrected, or abated as the case may be by injunction," Code § 15.1-499; *see* Norfolk City Charter § 2(27), unless any of the equitable defenses were applicable. None of them was.

■ We have consistently adhered to the view, albeit a minority view, that certain equitable defenses do not apply to the state or local governments when acting, as here, in a governmental capacity. *Westminister-Canterbury of Hampton Roads v. City of Virginia Beach*, 238 Va. 493, 502-03, 385 S.E.2d 561, 566-67 (1989) (estoppel); *Gwinn v. Alward, supra*, (estoppel and, implicitly, unclean hands); *Board of Supervisors of Washington County v. Booher*, 232 Va. 478, 481, 352 S.E.2d 319, 321 (1987) (estoppel, laches); *Segaloff v. City of Newport News*, 209 Va. 259, 261-62, 163 S.E.2d 135, 137 (1968) (estoppel). We decline the landowner's invitation to reverse our earlier decisions or to carve an exception to the rule where, in the landowner's words, "third parties [such as lenders and tenants] have suffered as a result of a municipality's long-standing failure to enforce its ordinances."

■ The landowner's attempt to apply the doctrines of vested rights and waiver must meet the same fate. The vested rights theory is bottomed on a claim that the landowner has established a valid nonconforming use at the subject property. But to establish such a use, it must be a lawful use existing on the effective date of the ordinance and continuing since that time not in conformance with the ordinance. *Knowlton v. Browning-Ferris*, 220 Va. 571, 572 n.1, 260 S.E.2d 232, 234 n.1 (1979). In this case, the use in violation of the certificate of occupancy was unlawful from its inception and remains so. And, the landowner is also incorrect that the apartment use is lawfully nonconforming as a "more restricted use" than a motel because the City's zoning administration per-

sonnel allegedly "knew" that the property would be used as apartments. No subordinate municipal official can bind the municipality to an incorrect or dishonest interpretation of the ordinances; indeed, at most, the landowner's allegations place it *in pari delicto* with the City's 1983-84 zoning personnel who allegedly acted improperly. Thus, the landowner has established no lawful nonconforming use from which a change to a "more restricted use" can be accomplished.

On the question of waiver, the City points out that the provisions of the zoning ordinance and the building code are legislatively enacted. Thus, it correctly argues, waiver of any provision thereof, or delegation to subordinate officials to waive any such provision, likewise must come by legislation; there can be no implicit waiver or implicit delegation of such authority. *Commonwealth* v. *Washington Gas Light Co.*, 221 Va. 315, 323, 269 S.E.2d 820, 825 (1980). Here, there has been no explicit legislative waiver.

We come now to the landowner's contention that the trial court improperly granted summary judgment on the defense of "retaliatory prosecution." Couching the argument in terms of the Fourteenth Amendment to the United States Constitution, the landowner contends that "Kelly has been denied its right to equal protection because the City has selectively enforced its motel ordinance to enjoin Kelly's use of the Property while ignoring the same 'violation' by other property owners." Elaborating, the landowner argues that it has been singled out for punishment from among others who unlawfully operate motels as apartments in order to deter others from challenging real estate assessments in the area and to enhance the City's plan to rehabilitate the area. There is no merit to this contention.

Of course, the mere enforcement of the law against one individual and not against others does not amount to a denial of equal protection of the laws. *Union Tanning Co.* v. *Commonwealth*, 123 Va. 610, 639, 96 S.E. 780, 788 (1918) (taxpayer's equal protection argument rejected when state imposed seven years of previously omitted personal property tax assessments). And, while protection of the laws will be extended equally to all individuals in the pursuit of their lawful activities, no individual has the right to demand protection of the laws in the commission of an unlawful act. *See Sims* v. *Cunningham*, 203 Va. 347, 353, 124 S.E.2d 221, 225, *cert. denied*, 371 U.S. 840 (1962). Because

the use of the subject property is unlawful, the so-called "retaliatory prosecution" defense is not applicable to this enforcement action against such unlawful conduct.

█ Finally, we reject the landowner's contentions that the trial court erred by overruling the demurrer and by limiting discovery. The individual partners were properly made parties to the suit. "A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." Code § 50-25(A). Moreover, the individual defendants, as partners, are jointly and severally liable for wrongful acts chargeable to the partnership. Code §§ 50-13 and -15.

█ The question whether to limit pre-trial discovery is a matter within the sound judicial discretion of the trial court.* Where, as here, the relevant facts were undisputed and a dispositive motion for summary judgment was pending, we cannot say that the trial court abused its discretion in limiting discovery until the court had ruled upon the motion.

Accordingly, the judgment of the trial court will be

*Affirmed.*

---

* The court did not prohibit *all* discovery. During the final hearing, which had been scheduled expressly to allow the landowner to depose City officials in the court's presence on the "retaliatory prosecution" issue, the chancellor actually had to force landowner's counsel to question the four deponents, one City councilman and three City employees. This was because the trial court wanted to afford the landowner every opportunity to demonstrate there were material facts genuinely in dispute on that issue.