## CIRCUIT COURT OF SHENANDOAH COUNTY

Land & Learning
Devel., L.L.C.

v.

Shenandoah County
Board of Supervisors

May 2, 2001

Case No. (Chancery) CH00-258

BY JUDGE DENNIS L. HUPP

The complainant, Land & Learning Development, L.L.C. (LLD), seeks an injunction against the Board of Supervisors of Shenandoah County (Board) requiring the Board to approve LLD's proposed plans for a "cluster housing development," alleging that the Board's denial of same was arbitrary and capricious and without legal justification. The Board demurs, contending that the bill of complaint identifies the real estate that is the subject of this suit as consisting of 29.069 acres, whereas the definition of "cluster housing development" as found in Section 165-4 of the Code of Shenandoah County (Code) limits the size of any such development to 25 acres. Specifically, the Code defines "cluster housing development" as a "complex of detached, single-family residential dwellings, to be constructed on a plat of land of at least five (5) and not more than twenty-five (25) contiguous acres under one (1) ownership or control. . . ." Section 165-4.

LLD argues that the acreage limitations under that definition apply to that part of the land where the detached, single-family residential dwellings are to be located, and not to the total acreage involved in the project. LLD further argues that it would not make sense to limit the size of these developments if

the goal of allowing cluster housing developments is to "encourage and protect open spaces" as stated in Section 165-69 of the Code.

Mr. Neal, in closing, invited me to review the Shenandoah County Zoning Ordinances (Chapter 165 of the Code) and suggested that such review would support his argument that the acreage limitations in the cited definition do not make sense if applied to the project as a whole rather than to that portion of the property where the houses are to be located. I have taken up his invitation, but I do not agree that, when taken together, the various provisions relating to cluster housing developments support his view.

From my reading of the zoning ordinances, I find that cluster housing developments are permitted in conservation,[1] agricultural,[2] and all residential districts.[3] In conservation and agricultural districts, the "cluster housing development *project* must consist of at least ten (10) contiguous acres." Section 165-11(H)(2) and Section 165-12(H)(2) (emphasis added). In each of the residential districts, the "cluster housing development *project* must consist of at least five (5) contiguous acres." R-1 District — Section 165-13(I)(2); R-2 District — Section 165-14(I)(2); and R-3 District — Section 165-70 (emphasis added). Each of these minimum acreage provisions is in accord with the definition of "cluster housing development" cited above. Certainly, the word "project" means the entire development, including open spaces and is not limited to just that portion of the property where houses are to be located. To be consistent, the definitions section (Section 165-4) must be read in the same way. While a cluster housing development must by definition contain at a minimum five acres, the Board has chosen to increase that minimum in certain zoning districts. While the various code provisions relating to cluster housing developments in individual districts do not state any maximum acreage, the definition of "cluster housing development" does include a maximum, that being 25 acres as previously stated. That definition applies throughout the zoning ordinance (Chapter 165 of the Code). Again, to achieve consistency, this maximum acreage provision must be read to apply to the whole "project" and not just to that portion of the project where residential housing will be located. The rules of statutory construction apply to the interpretation of ordinances as well. See *Higgs v. Kirkbride*, 258 Va. 567, 522 S.E.2d 861 (1999). This Court is obliged, whenever possible, to interpret the several parts of an ordinance as a consistent and harmonious

---

[1] Section 165-11(B)(1)(l) and (H).

[2] Section 165-12(B)(1)(o) and (H).

[3] R-1 District — Section 165-13(B)(1)(e) and (I); R-2 District — Section 165-14(B)(1)(f) and (I); and R-3 District — Section 165-69 through 165-79.1.

whole so as to effectuate the goals of the legislative body enacting same. *Virginia Elec. & Power Co. v. Prince William County*, 226 Va. 382, 309 S.E.2d 308 (1983).

LLD argues that limiting the maximum size of a cluster housing development undermines the stated goal of preserving open spaces, and that argument does make sense; however, there were apparently countervailing policy goals which led the Board to impose this limitation. The enactment of zoning ordinances is a valid exercise of the police power of the state, delegated to the locality by the General Assembly. *Helmick v. Town of Warrenton*, 254 Va. 225, 492 S.E.2d 113 (1997); Article 7 of Chapter 22 of Title 15.2 of the Code of Virginia of 1950, as amended. Enactment of zoning ordinances is legislative action, and the judiciary, in reviewing those ordinances, should not substitute its judgment for that of the local legislative body. *Byrum v. Orange County*, 217 Va. 37, 225 S.E.2d 369 (1976); and *Helmick v. Town of Warrenton* at 229.

LLD further argues that county officials, in actual practice, have not adhered to the stated maximum acreage and apparently have not interpreted the ordinance in the manner the Board now espouses. Of course, I have taken no evidence in this regard, since I am dealing with a demurer. Even if that is the case, however, the Board is not now estopped from advancing the present argument. *Segaloff v. City of Newport News*, 209 Va. 259, 163 S.E.2d 135 (1968); *Dick Kelly Enterprises v. City of Norfolk*, 243 Va. 373, 416 S.E.2d 680 (1992); and *Foster v. Geller*, 248 Va. 563, 449 S.E.2d 802 (1994).

I sustain the demurrer and dismiss this case.