# CIRCUIT COURT OF FAIRFAX COUNTY

Eileen M. McLane,
Fairfax County
Zoning Administrator

v.

Robert L. Wiseman

Case No. CL-2010-16247

Robert L. Wiseman

v.

Fairfax County
Board of Supervisors

Case No. CL-2010-14604

November 9, 2011

By Judge Robert J. Smith

This matter comes before the Court on a writ of certiorari of Robert L. Wiseman's appeal of the decision of the Board of Zoning Appeals ("BZA") upholding the Notice of Violation issued to Wiseman by the Zoning Administrator. Wiseman contends that: (1) this Court should remand the case to the BZA due to the BZA's failure to make specific findings of facts in support of its decision to affirm the Zoning Administrator; and (2) Wiseman's maintenance of numerous vehicles constitutes a lawful

nonconforming use. After considering the oral arguments of counsel and reviewing the applicable legal authority, I find that the record amply supports the BZA's decision. I hereby affirm the BZA's decision. Further, I grant the Zoning Administrator's request for declaratory judgment and injunctive relief.

*Background*

Wiseman purchased the property located at 5959 Colchester Road in Fairfax, Virginia (the "property"), in 1977. The property is zoned to the Residential Conservation (R-C) District and the Water Supply Protection Overlay (WS) District. The property presently contains a single-family residence and several storage structures. In 1978, Wiseman obtained two permits for an addition to the residence and a porch. No other permits are available for the remaining structures.

Sometime between 1980 and 1982, Wiseman began collecting antique vehicles and storing them on the property. On March 17, 2009, the Zoning Enforcement Branch received a complaint that the property contained a possible junk yard, storage yard, and inoperable vehicles. On March 26, 2009, a Zoning Inspector, Laura Ferramosca, attempted to inspect the property but failed due to "No Trespassing" signs posted on the property.

Relying on aerial photographs and observations of the perimeter of the property, the Zoning Administrator issued a Notice of Violation on July 1, 2009. The Administrator rescinded the Notice on August 18, 2009, and attempted to inspect the property again. The second inspection occurred on January 29, 2010. Based on the photographs taken from a helicopter, the Administrator issued another Notice of Violation on April 9, 2010.

The Notice cited Wiseman for: (1) establishing a junk yard in violation of Fairfax County Zoning Ordinance § 2-302(5); (2) establishing a storage yard in violation of Zoning Ordinance § 2-302(5); (3) allowing excess outdoor storage in violation of Zoning Ordinance §§ 10-102(24) and 2-302(6); (4) covering between 85 to 90% of the rear yard, in excess of the 30% maximum coverage, in violation of Zoning Ordinance §§ 2-302(6) and 10-103(3); and (5) erecting an eight-foot fence in violation of the seven-foot restriction provided in Zoning Ordinance §§ 10-104(3)(C) and 2-302(6). Wiseman appealed the Notice of Violation to the BZA. The BZA affirmed the Zoning Administrator's decision on September 22, 2010.

On October 15, 2010, Wiseman filed a timely appeal of the BZA decision in this Court. The Zoning Administrator filed her complaint for declaratory judgment and injunctive relief on November 17, 2010. The Court granted Wiseman a writ of certiorari on May 11, 2011. The two cases were consolidated on March 17, 2011. The Court heard the argument on July 28, 2011, and took Wiseman's appeal and the Zoning Administrator's complaint under advisement.

*Standard of Review*

Any person aggrieved by a BZA decision may appeal that decision to a circuit court. Va. Code Ann. § 15.2-2314 (2011). On appeal, the circuit court must afford the BZA decision a presumption of correctness. *Id.* The appellant may rebut that presumption by proving by a preponderance of the evidence that the BZA reached an incorrect decision. *Id.* When the issue on appeal is a question of law, the court must decide whether the BZA applied improper principles of law or whether the BZA's decision was plainly wrong. *Board of Supervisors v. Board of Zoning Appeals*, 271 Va. 336, 348, 626 S.E.2d 374, 382 (2006).

*Analysis*

A. *Scope of This Court's Review*

Before I address the parties' substantive arguments, I must determine exactly what is pending before the Court on this appeal. The Zoning Administrator contends that Wiseman initially appealed only the Administrator's determination that his property constituted a junk yard and not the other five determinations enumerated in the Notice of Violation. Consequently, the Administrator argues, because Wiseman may not bypass BZA review and because the time for appealing to the BZA has expired, Wiseman is barred from appealing to this Court the determinations he did not appeal to the BZA. In support of this proposition, the Administrator offers Wiseman's application for appeal, which stated he was appealing "determination of zoning enforcement department that Appellant is maintaining an illegal junkyard on his property."

It is true, as the Administrator submits, that the landowner aggrieved by the zoning administrator's decision must first exhaust the administrative remedies available to him. *Dick Kelly Enter. v. City of Norfolk*, 243 Va. 373, 378, 416 S.E.2d 680, 682 (1992). If a party does not pursue a mandatory appeal to the BZA before turning to this Court, the issue in question becomes "a thing decided." *Lilly v. Caroline County*, 259 Va. 291, 296, 526 S.E.2d 743, 745 (2000).

While Wiseman's application for appeal lacks specificity, Wiseman availed himself of the available administrative remedy, that is, an appeal to the BZA prior to requesting relief from this Court. In fact, it appears from the BZA record that the BZA considered all of the determinations of the Zoning Administrator at the September 22, 2010, hearing before affirming the Administrator.

Thus, because Wiseman appealed all six components of the Notice of Violation and because the BZA considered all these components at the

hearing, Wiseman's appeal as to the entire Notice of Violation is properly before this Court.

## B. *The BZA's Duty To Make Findings of Fact*

The first assignment of error Wiseman alleges in the writ is that the BZA did not make specific findings of fact in ruling on Wiseman's appeal of the Notice of Violation but merely adopted the Zoning Administrator's position. As a result, Wiseman argues, the BZA arrived at unfounded opinions and statements of fact when it ruled on the five components of the Notice of Violation.

As a rule, the BZA must provide the reviewing court with a sufficient record to enable the court to make an intelligent determination on appeal. *Ames v. Town of Painter*, 239 Va. 343, 348, 389 S.E.2d 702, 705 (1990); *Toone v. Board of Zoning Appeals*, 54 Va. Cir. 33, 43 (Fairfax 2000). In *Ames*, which dealt with the BZA's authority to grant special use permits, the Court upheld the trial court's ruling that the BZA failed to follow the zoning ordinance in granting Ames a special use permit. *Id.* at 350, 389 S.E.2d at 705-06. The BZA record was silent as to whether the BZA took into account specific considerations required by the zoning ordinance in special use cases. *Id.*

Similarly in *Toone*, the Court reversed the BZA's holding that Toone had failed to establish a lawful nonconforming use and remanded the case to the BZA to make proper findings of fact. *Toone*, 54 Va. Cir. at 43. The Court noted that the BZA record was "devoid of any findings concerning the BZA's determination of the credibility of the conflicting evidence on the lawful nonconforming issue or the principles utilized by the BZA in deciding this issue." *Id.* at 42. In fact, all the BZA did in *Toone* was uphold the Zoning Administrator's decision without making any findings of fact. *Id.* at 36.

Wiseman likens this case to *Toone* based on the fact that the BZA's final decision came in a concise letter that stated that "[a]t its September 22, 2010, meeting, the Board of Zoning Appeals took action to uphold the determination of the Zoning Administrator for the above-referenced appeal application." Unlike *Toone*, however, the record in this case is not devoid of findings of fact. Additionally, unlike *Ames*, there is no statutory standard to which the BZA must adhere in making specific findings of fact. All that the BZA must do is create a record that allows the circuit court to properly adjudicate the issues on appeal. *Packer v. Hornsby*, 221 Va. 117, 121, 267 S.E.2d 140, 142 (1980). I find that the BZA has done so in this case.

In fact, the verbatim transcript of the BZA hearing contains numerous findings of fact in support of the BZA's decision to affirm the Zoning Administrator. Specifically, the BZA made findings of fact that: (1) the vehicles on Wiseman's property were junk vehicles in violation of what

is permitted by the zoning ordinance; (2) the junk yard does not meet the requirements for an accessory use; (3) the fence is not a fully enclosed structure; (4) the Property violated the provisions on the storage yard; (5) the rear yard was covered up to 90 percent instead of the permitted 30 percent; and (6) the fence was eight feet and, as such, in violation of the ordinance which permits only seven feet.

Based on the transcript, the record is neither devoid of nor silent as to the findings of fact the BZA made and the reasoning it applied in affirming the Zoning Administrator.

I now turn to Wiseman's appeal of the specific components of the Notice of Violation.

C. *Whether Wiseman's Vehicle Collection Constitutes a Lawful Nonconforming Use*

A lawful nonconforming use is "a lawful use existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance." *C. & C., Inc. v. Semple*, 207 Va. 439, 439, n. 1, 150 S.E.2d 536, 537, n. 1 (1966), *quoting* 2 E. Yokley, *Zoning Law and Practice*, § 16-2, at 212 (3d ed. 1965). Moreover, the Fairfax County Zoning Ordinance limits the application of nonconforming use provisions to "all nonconforming uses and buildings existing on the effective date of this Ordinance and to all uses and buildings that become nonconforming by reason of any amendment thereof." Fairfax County, Va., Fairfax County Zoning Ordinance § 15-103(11) (1978).

The Zoning Ordinance, which became effective in 1978, does not list junk yards or storage yards as permitted uses in the R-C District. Zoning Ordinance § 3-RC02. According to Zoning Ordinance § 2-302(5), only uses specifically listed as permitted in a particular district are allowed in that district. Thus, a junk yard or storage yard is not a permitted use in the R-C District.

A "junk yard" is defined as:

The use of any space, whether inside or outside a building, for the storage, keeping, or abandonment of junk, including scrap metals or other scrap materials, or for the dismantling, demolition, or abandonment of automobiles or other vehicles or machinery or parts thereof; provided that this definition shall not apply to outside storage as permitted as an accessory use under the provisions of Sect. 10-102. A junkyard shall also be inclusive of an automobile graveyard as defined herein.

Zoning Ordinance § 20-300.

Both the Zoning Administrator and the BZA classified the collection of vehicles and other items on Wiseman's property as a "junk yard." Putting

aside the question whether this "junk yard" somehow fits into the permitted accessory use category of § 10-102, I find that, if a "junk yard" exists on the property, it is not a lawful nonconforming use. Specifically, the zoning ordinance prohibiting junk yards in residential districts went into effect in 1978. Wiseman did not begin collecting vehicles and other items until 1980, at the earliest. Thus, Wiseman's maintenance of a junk yard began after the enactment of the ordinance and, as such, does not qualify as a "lawful use existing on the effective date of the zoning restriction." *Semple*, 207 Va. at 439, n. 1, 150 S.E.2d at 537, n. 1.

Wiseman argues that the 1985 Amendment to the Ordinance made his use of the property a lawful nonconforming use. Among other things, the 1985 Amendment substituted "inoperative motor vehicle" for "junk vehicle" and expanded the definition § 10-102(13), which deems certain maintenance of inoperative vehicles a permitted accessory use. Fairfax County, Va., Code of the County of Fairfax, ch. 112 (1976) (amended 1985). The Amendment, however, did not change the essential provision that junk yards are not permitted in residential districts.

Therefore, because a junk yard was not a permitted use at the time Wiseman established a junk yard on the property and because the 1985 Amendment to the Ordinance did not redefine Wiseman's use of the property, I decline to accept Wiseman's argument that his use was a lawful nonconforming use.

D. *Whether Wiseman's Use of the Property Falls into the "Permitted Accessory Use" Category of the Junk Yard Provision*

The next issue I consider is whether Wiseman's use of the property constitutes an exception to the definition of "junk yard" because it is a permitted accessory use under Zoning Ordinance § 10-102(13). Section 10-102(13) includes in the category of permitted accessory uses "[i]noperative motor vehicles, as defined in Chapter 110 of the Code, provided such vehicles are kept within a fully enclosed building or structure or are kept completely screened or shielded from view in accordance with Chapter 110 of the Code." Zoning Ordinance § 10-102(13). The permitted accessory uses outlined in Article 10 must adhere to the general definition of "accessory use" under the Ordinance.

The Fairfax County Code defines "inoperative motor vehicle" as "[a]ny motor vehicle, trailer, or semitrailer as herein defined: (A) which is not in operating condition; or (B) which does not display valid license plates; or (C) which does not display an inspection decal that is valid or does display an inspection decal that has been expired for more than sixty (60) days." County Code § 110-2-1.

Wiseman seems to contend in his brief that no evidence was introduced to show that the vehicles on the property were inoperative. Yet, he goes

on to say that "[i]t is highly probable that many of these vehicles would actually operate but did not have current license tags for reasons other than failure to operate." Because failure to display valid license plates makes a vehicle "inoperative" under § 110-2-1, whether the vehicles could actually operate mechanically is immaterial.

Next, Wiseman argues that the BZA erred in upholding the Zoning Administrator's determination that the junk vehicles were not "fully enclosed" as required by Zoning Ordinance § 10-102(13). Full enclosure within a building or structure is one of the two possibilities Wiseman could pursue to properly maintain the vehicles. Wiseman could also maintain the vehicles as a permitted accessory use if he "screened or shielded" them from view. Zoning Ordinance § 10-102(13). Section 110-2-1(1) of the County Code defines "screened or shielded from view" as "[n]ot visible by someone standing at ground level from outside of the property on which the subject vehicle is located."

There is no evidence in the record that the BZA considered whether the vehicles were screened or shielded from view. Considering that the county personnel had to use helicopters to observe the property, it is possible that the vehicles were not visible from the ground level and were thus "shielded or screened from view" within the meaning of Code § 110-2-1(1). Even if the vehicles on the property constituted an automobile graveyard under Zoning Ordinance § 20-300 because there were more than five inoperable vehicles on the property and they were arguably "exposed to the weather," I must consider whether the accessory use exception applies because an automobile graveyard is, in essence, a junk yard. Zoning Ordinance § 20-300.

The Zoning Ordinance defines "accessory use" as a use that:

1. Is clearly subordinate to, customarily found in association with, and serves a principal use; and

2. Is subordinate in purpose, area, or extent to the principal use served; and

3. Contributes to the comfort, convenience, or necessity of the occupants, business enterprise, or industrial operation within the principal use served; and

4. Is located on the same lot as the principal use, except any building that is customarily incidental to any agricultural use shall be deemed to be an accessory use, whether or not it is situated on the same lot with the principal building.

Zoning Ordinance § 20-300.

Whether a use is accessory must be decided upon the available evidence. *Wiley v. County of Hanover*, 209 Va. 153, 156, 163 S.E.2d 160, 163 (1968). In this case, the main question is whether Wiseman's use of the vehicles

was subordinate to his residence or if it transcended the definition of an accessory use and became an impermissible primary use. Neither party disputes that the vehicles are located on the same lot as the residence. The BZA record reflects that the BZA did not necessarily reject the allegation that the vehicles contributed to Wiseman's "comfort, convenience, or necessity." The BZA did, however, decline to accept Wiseman's contention that the vehicles were "clearly subordinate" to his use of the property as his residence.

Subordinate means "placed in or occupying a lower class, rank, or position: inferior." *Merriam-Webster Dictionary* 1175 (9th ed. 1989). In the zoning context, whether a use is subordinate may turn on such factors as the time devoted to or the size of the use. *Orion Sporting Group, L.L.C. v. Board of Supervisors of Nelson County*, 68 Va. Cir. 195, 201-02 (Nelson 2005). The petitioner in *Orion* owned a hunting preserve and maintained a shotgun sports and/or sporting clays facility as an accessory use thereto. *Orion*, 68 Va. Cir. at 195. After reviewing the evidence, the Court held that the petitioner's maintenance of the sporting clays facility was not accessory to the hunting preserve. *Id.* at 201. In determining that the sporting clays facility was a main use, the Court found that it was operated all year, occupied a substantial part of the property, and was additional, rather than incidental, to the hunting preserve. *Id.* at 202.

Here, as in *Orion*, Wiseman maintains the vehicles on the property throughout the year and the vehicles occupy a large portion of the property. Based on this evidence, it is fair to say that the maintenance of the vehicles is a use alternate to the residence and not subordinate thereto. The BZA found that Wiseman's use of the vehicles was not subordinate to his residence in purpose, area, or extent. Because the BZA's decision is presumably correct, Wiseman had the burden to rebut that presumption by a preponderance of the evidence. Wiseman's argument that the vehicles are accessory because they are his hobby does not satisfy that standard of proof.

Consequently, I find that Wiseman's maintenance of the inoperative vehicles on his property does not meet the definition of "accessory use." Because this use is not accessory, the vehicles constitute a junk yard and violate the Zoning Ordinance. Given Wiseman's failure to prove by a preponderance of the evidence that the maintenance of the vehicles was an accessory use, the BZA's error in not addressing whether the vehicles were "screened and shielded from view" has no bearing on my decision, and this point is moot.

Thus, I affirm the BZA's decision that Wiseman maintained a junk yard and a storage yard on the Property in violation of §§ 2-302(5) and (6) of the Zoning Ordinance.

E. *Whether the BZA Erred in Concluding That Wiseman's Vehicles Violated the Open Storage Limitations of the Ordinance*

Wiseman next contends that the BZA erred in concluding that his storage of the vehicles was limited to 100 square feet. The Zoning Ordinance allows outdoor storage as an accessory use provided that "such storage is located on the rear half of the lot, is screened from view from the first story window of any neighboring dwelling, and the total area for such outdoor storage does not occupy more than 100 square feet." Zoning Ordinance § 10-102(24).

The BZA determined that the outdoor storage Wiseman kept exceeded 100 square feet. Wiseman contends that the BZA failed to read § 10-102(24) in conjunction with § 10-102(13), which allows inoperative vehicles as an accessory use provided that they are properly maintained. According to Wiseman, § 10-102(24) allows for 100 square feet of storage *in addition* to junk vehicles permitted by § 10-102(13).

I decline to accept Wiseman's reading of § 10-102. Subsection 10-102(24) is unambiguous in that it limits outdoor storage to 100 square feet. There is nothing to suggest that §§ 10-102(24) and (13) must be read together to give the landowner an additional 100 square feet of storage. Furthermore, I have already concluded that Wiseman's vehicles did not constitute a permitted accessory use under § 10-102(13). From the given facts, I cannot conclude that the BZA was plainly wrong or applied incorrect principles of law in determining that Wiseman's outdoor storage exceeded 100 square feet.

I therefore affirm the BZA's decision that Wiseman's property violated § 10-102(24) of the Zoning Ordinance.

F. *Whether the BZA Erred in Determining That the Property Violated §§ 10-103(3) and 10-104(3)(C)*

At the outset, because both of these sections deal with accessory uses, Wiseman's argument is moot due to my determination that the vehicles on the property were not an accessory use. Nevertheless, I will address them below.

Wiseman argues that the BZA erred in concluding that the fence that surrounded the vehicles violated § 10-104(3)(C), which states that "[i]n any side or rear yard of any lot, a fence or wall not exceeding seven (7) feet in height is permitted." Zoning Ordinance § 10-104(3)(C). Specifically, Wiseman contends that because the fence was only six feet at the time it was first constructed, it did not violate the 1978 version of the Ordinance.

In 1978, the restriction on fences constructed in a rear yard was the same as it is today, seven feet. Zoning Ordinance § 10-105(2)(B) (1978 version). Wiseman is thus correct in asserting that his six-foot fence did not violate the Ordinance in 1978. In fact, it did not violate the Ordinance until he

increased the fence in height to eight feet, the height the fence is today. Although the fence may have been in compliance with the Ordinance in 1978 and any other years it did not exceed seven feet, today it violates the seven-foot limitation of § 10-104(3)(C). Additionally, because an eight-foot fence would violate the ordinance in 1978, as well as today, there is no nonconforming use exemption available to Wiseman.

Therefore, I affirm the BZA's determination that Wiseman's fence violated § 10-104(3)(C) of the Zoning Ordinance.

Next, I turn to Wiseman's argument that the BZA erred in concluding that the property violated § 10-103(3), which limits the coverage of a rear yard to 30 percent. Wiseman contends that the rear yard on the property did not violate the 30 percent limitation prior to 1982 or possibly 1985.

The present version of the Ordinance provides that all accessory uses "shall cover no more than thirty (30) percent of the area of the minimum required rear yard." Zoning Ordinance § 10-103(3). The 1978 predecessor of § 10-103(3), namely § 10-104(3), imposed the same limitation on the coverage of a rear yard. Consequently, coverage exceeding 30 percent would be illegal in 1978, as well as today. Assuming, *arguendo*, that the coverage of Wiseman's rear yard did not exceed 30 percent at the time he began collecting the vehicles, it certainly does so today. The Zoning Administrator and the BZA found that the coverage in fact amounted to 80 to 90 percent of the rear yard. I do not see how this extraordinary number could be in compliance with the Ordinance.

Thus, I affirm the BZA's conclusion that the Property violated § 10-103(3) of the Ordinance.

In conclusion, I find that the BZA was not plainly wrong nor applied incorrect principles of law in affirming the Zoning Administrator. I affirm the BZA's decision as to each of the five violations identified in the Notice of Violation. Furthermore, I grant the Zoning Administrator's request for injunctive relief and declaratory judgment.