PRESENT:  All the Justices

PRINCE WILLIAM BOARD OF
COUNTY SUPERVISORS, ET AL.

v.  Record No. 171030

HENRY ARCHIE, JR.

OPINION BY
JUSTICE S. BERNARD GOODWYN
August 9, 2018

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge

In this appeal, we consider whether the circuit court erred when it found that an automobile graveyard was a lawful nonconforming use, because the use began prior to the enactment of the county's zoning ordinances and had not been discontinued.

BACKGROUND

On August 13, 2015, Henry Archie, Jr. (Archie) applied for a "verification of a non-conforming use (automobile graveyard)" on three contiguous parcels in Prince William County (the County): 13059 Minnieville Road (Parcel 20), 13065 Minnieville Road (a.k.a. 2421 Davis Ford Road) (Parcel 20A), and 13069 Minnieville Road (Parcel 20B).

On November 5, 2015, Rebecca Horner, the Acting Zoning Administrator of Prince William County (the Administrator), issued a letter to Archie determining that the use of Parcels 20 and 20B as an automobile graveyard were lawful nonconforming uses, but that use of Parcel 20A as an automobile graveyard was not a lawful nonconforming use.

The Administrator referenced a May 24, 1991 decree from the Circuit Court of Prince William County finding that the use of Parcels 20 and 20B as an automobile graveyard was lawfully nonconforming, because there had been an automobile graveyard on those parcels since before 1958, the year the County adopted a zoning ordinance.  The Administrator claimed that the same decree "noted there was no evidence of any cars stored on [Parcel] 20A at that time."

The Administrator concluded that "any cars stored on lot 20A were put on the parcel after 1958 without any permit to do so," and the use of that lot "as an automobile graveyard was not a lawfully nonconforming" use. The Administrator ordered the use of Parcel 20A as an automobile graveyard to cease.

*BZA Hearing and Decision*

Archie appealed the Administrator's determination to the Prince William County Board of Zoning Appeals (BZA). In support, he asserted that the use of Parcel 20A as an "auto[mobile] graveyard was started in 1954 and has not stop[p]ed."

The BZA held a hearing on March 28, 2016. Testimony and other evidence presented at the hearing established the history of the automobile graveyard, including Parcel 20A, as well as the involvement of Parcel 20A in two parallel court cases concerning its use in the 1980s and early 1990s.

In 1954, Archie's family established an automobile salvage business named Penny's Auto Parts on property that was later partitioned into Parcels 20, 20A, and 20B by deed dated February 27, 1974. After partition, Archie's parents, Henry Archie, Sr. and Annie Archie, owned Parcels 20 and 20B, and his aunt, Dorothy Williams and her husband (Dorothy), owned Parcel 20A. The three parcels are "stacked up like boxcars," with Parcel 20 fronting Minnieville Road, Parcel 20B in the back, and Parcel 20A in the middle between Parcels 20 and 20B.[1] There is a 20-foot right-of-way running through the three lots. A certificate of zoning approval from

---

[1] The three parcels are now zoned A-1 Agricultural, and automobile graveyards are not permitted by right or special use in any zoning category in the County. All automobile graveyards in the County must be "grandfathered" as lawful nonconforming uses that pre-date the enactment of the County's zoning ordinances in 1958.

2

the County, requested by Dorothy on behalf of Penny's Auto Parts, dated December 8, 1982, approved the use of Parcel 20A as a "non-conforming auto[mobile] graveyard."

In 1985, the then-County Zoning Administrator filed an action in the Circuit Court of Prince William County (Chancery No. 21319) (Zoning Case) against the owners of the three parcels upon which the automobile graveyard was being operated, alleging that the maintenance of an automobile graveyard on those parcels violated the County's zoning ordinance. While that case was pending, Dorothy sold Parcel 20A to Land Management Groupe, Inc. (LMG) on September 22, 1987. LMG was subsequently substituted in the stead of Dorothy as a defendant in the Zoning Case.

On November 16, 1989, LMG filed a complaint against Archie in the Circuit Court of Prince William County (Chancery No. 28641) (LMG Case) because, as stated in that complaint, Archie was "currently storing automobiles, automobile parts, junk and other vehicles and vehicle parts on [LMG's] property [Parcel 20A] without [LMG's] consent and expressly contrary to its stated desires."

On April 17, 1990, the circuit court entered an agreed order in the LMG Case which "adjudged, ordered, and decreed that [Archie] has placed and stored junk vehicles and automobile parts upon [Parcel 20A] without right or permission of [LMG] since at least September 1989." The order "perpetually enjoined [Archie] from placing or storing any vehicles or any auto parts of whatever description upon [Parcel 20A] owned by [LMG], its successors or assigns," and directed Archie to remove the cars and car parts within 30 days.

On May 2, 1990, LMG's counsel sent a letter to the County attorney in the Zoning Case stating that, in the LMG case, Archie had been ordered to remove any cars and car parts from Parcel 20A. LMG asked the County to dismiss LMG from the Zoning Case because "the

3

automobiles and their parts which caused the zoning violation, will be removed by May 17, 1990, [so] the action against [LMG] will become moot."

Less than three weeks later, however, on May 23, 1990, LMG filed a motion in the LMG Case to hold Archie in contempt, because he "has failed to comply with the Order of this Court as several junk vehicles and several auto parts owned by defendant Archie remain present on the property of [LMG]." Archie was found in contempt and fined as a result of the motion. Archie testified at the BZA hearing that, after the order was entered, he removed some of the junk vehicles from Parcel 20A, but "[o]ver a hundred" vehicles remained on the property.

On October 2, 1990, the circuit court entered an agreed order in the Zoning Case, dismissing LMG from that case because "[i]t appear[s] that [LMG] has cleared its property of junked vehicles and parts thereof by virtue of an Agreed Order in [the LMG Case]." Shortly thereafter, on October 11, 1990, LMG filed a motion to amend its complaint in the LMG Case. LMG's amended complaint alleged that Archie was "currently storing" junk vehicles on Parcel 20A.

On May 24, 1991, the circuit court entered a final order in the Zoning Case, finding that Archie carried on a business of operating an automobile graveyard, as defined in the County zoning ordinance, prior to adoption of the County zoning ordinance on September 1, 1958, and that the operation of the business had been continuous since that date. It thus found that the use of Parcels 20 and 20B as an automobile graveyard was a lawful nonconforming use. It noted that Parcel 20A "is not properly before the Court because no evidence was presented [by the County] that there are any cars stored thereon and because a decree enjoining storage thereon has already been entered by this Court in [the LMG Case]."

On August 19, 1991, an agreed final order was entered in the LMG Case, under the terms of which Archie was to pay $6,000 for LMG's attorneys' fees and execute a note in favor of LMG for an additional $6,000, payable in semi-annual installments of $250 each. The final order did not order the removal of any vehicles from the property.

LMG defaulted on the payment of the deed of trust note on Parcel 20A, and Dorothy repurchased the property at a trustee's sale in February 1992. Archie purchased Parcel 20A from Dorothy in 1995, and now owns all three parcels.

At the March 28, 2016 BZA hearing, Archie testified that all three parcels are used to store "junk cars and car parts." He stated that cars have been stored on Parcel 20A continuously since 1954, and that he stored junk cars and car parts on Parcel 20A while Dorothy owned the property, and also while LMG owned the property.

Regarding the order dismissing LMG from the Zoning Case, Archie testified that he had not cleared all of the junk cars from Parcel 20A as of October 2, 1990, and that LMG had not "taken any steps to clear the parcel," which he knew because he "was there every day." Archie stated that LMG amended its complaint in the LMG Case shortly after entry of the October 2, 1990 order dismissing LMG in the Zoning Case, because Archie was still storing cars on Parcel 20A in October 1990.

Regarding the final order in the LMG Case, Archie stated that his payment to LMG reflected in the final order was "[f]or having stored cars on their property," but not for any reimbursement of costs to clean up the property. Archie stated that he continued to store cars on Parcel 20A before and after the agreed final order in the LMG Case. He asserted that he did "not ever" "stop storing junk cars and car parts" on the property.

5

Archie presented six additional witnesses, who all confirmed that Parcel 20A had been used continuously as an automobile graveyard. The witnesses confirmed that they "never, ever saw any change" and the property was covered by "the salvage cars from one end to the other" during the period from 1987 to 1995.

After Archie's witnesses, the BZA opened the floor for remarks by other citizens. Three citizens spoke, and confirmed that the land was "never cleared" during the time LMG owned it, and they had "never seen a part of that land cleared of any vehicles."

In response to questions from the BZA as to whether the property was actually ever cleared of junk vehicles, the County did not provide any witnesses. It relied on the language in the April 1990 order in the LMG Case, in which Archie was directed to move the cars and car parts within 30 days, as proof that the property was in fact cleared of vehicles. The County reasoned that LMG would not have been dismissed from the Zoning Case if the land had not been cleared.

Archie responded that "the reality is that the cars were never cleared from the property," and there was never any fact-finding conducted in the Zoning Case, concerning what was in fact on Parcel 20A. Further, he argued that regardless of who owned the property at any given point in time, the evidence was uncontroverted that "the property was continuously used to store vehicles, whether it was with or without permission." He pointed to the affidavits from 13 additional witnesses who stated that "the property has been operating as an automobile salvage yard from 1958 to the present with no interruption." He noted that the County "let the situation go on for more than 20 years," and had not "presented any other evidence beside the court record that the use was ever actually" discontinued.

At the close of the hearing, the BZA upheld the Administrator's denial of the non-conforming use verification for Parcel 20A by a vote of 3 to 2.

*Circuit Court Hearing and Decision*

Archie filed a petition for a writ of certiorari in the Circuit Court of Prince William County and, on April 28, 2016, the circuit court issued a writ of certiorari for the complete record of the BZA proceedings.

After a March 15, 2017 hearing, review of the record transmitted from the BZA proceedings and consideration of the argument of counsel, the circuit court entered a final order on May 2, 2017, reversing the BZA's decision. The circuit court found that the "use of Parcel 20A as an automobile salvage business operation predated the zoning ordinances of Prince William County," and that the pre-existing lawful nonconforming use was never abandoned or discontinued.

The circuit court acknowledged LMG's "intent to discontinue the nonconforming use" of Parcel 20A, and recognized that Archie did not have the legal right to use Parcel 20A while it was owned by LMG. However, it found that the "actual use on Parcel 20A as an automobile salvage business operation has not stopped since prior to the enactment of the Prince William County Zoning Ordinances." It concluded that because the "nonconforming use of Parcel 20A [was] never [discontinued] . . . there was no abandonment of the nonconforming use," and that the automobile graveyard on "Parcel 20A is, therefore, a lawful, nonconforming use." The County appeals.

Two assignments of error have been granted:

1. The trial court erred when it ruled that Archie has a lawful nonconforming use to operate an automobile junkyard at 13065 Minnieville Road because Archie did not own the property between 1987-1992, did not have permission to operate an automobile junkyard on the property during the time period and did not have any

7

legal right to use the 13065 Minnieville Road as an automobile junkyard during that time period.

2. The trial court erred when it held that the nonconforming use was not discontinued because Land Management Groupe, Inc. purchased the property in 1987, and never continued the use of placing junk vehicles or parts or placed any junk vehicles or parts on 13065 Minnieville Road throughout its ownership period.

ANALYSIS

In an appeal from a circuit court decision reviewing a determination by a board of zoning appeals, "this Court accords a presumption of correctness to the circuit court's factual findings but reviews its conclusions of law de novo." *W&W P'ship v. Prince William Cty. Bd. of Zoning Appeals*, 279 Va. 483, 486, 689 S.E.2d 739, 741 (2010) (citations omitted); *see also Hale v. Board of Zoning Appeals*, 277 Va. 250, 268, 673 S.E.2d 170, 179 (2009) (noting that, when this Court reviews a circuit court's decision in such a case, the circuit court's decision "is no longer presumed to be correct on appeal and its conclusions of law are reviewed de novo") (citation and internal quotation marks omitted).

A circuit court's interpretation of a statute or ordinance and its application of that statute or ordinance to the facts of a case are reviewed *de novo*. *Hale*, 277 Va. at 269, 673 S.E.2d at 179. When reviewing the interpretation of a zoning ordinance, the "words of the ordinance are to be given their plain and natural meaning," and the "purpose and intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose." *Donovan v. Board of Zoning Appeals*, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996).

Code § 15.2-2307(C) provides for a locality to adopt a zoning ordinance that allows nonconforming uses to continue unless the use is discontinued:

A zoning ordinance may provide that land, buildings, and structures and the *uses* thereof which do not conform to the zoning prescribed for the district in which

8

they are situated may be continued only so long as the then existing . . . *use continues* and such *use is not discontinued* for more than two years . . . .

(Emphases added.)

The County has adopted ordinances consistent with this statute. Under the Prince William County Code (County Code), as a general matter, a "nonconforming use, lot or structure may continue as it existed when it became nonconforming." County Code § 32-601.20. *See also Hale*, 277 Va. at 271, 673 S.E.2d at 180 ("It is well established in the law that as to an existing use, absent condemnation and payment of just compensation, the landowner has the right to continue that use even after a change in the applicable zoning classification causes the use to become nonconforming."). The County Code defines a "nonconforming use" as "[a]ny use that was lawful on the date of enactment of this chapter, or amendment thereto, which has been continued although otherwise rendered unlawful by such enactment or amendment." County Code § 32-601.10(1).

It is agreed that an automobile salvage business was started in 1954 on the property that was subdivided into the three separate parcels. After the County adopted its zoning ordinances in 1958, the business continued to operate on the parcels as a lawful nonconforming use. In 1982, the County confirmed Parcel 20A's lawful nonconforming use as an automobile graveyard.

Because it is undisputed that the use of Parcel 20A as an automobile graveyard was a lawful nonconforming use as of the enactment of the County zoning ordinance, this case is unlike the cases cited by the County, *Board of Supervisors of Washington County v. Booher*, 232 Va. 478, 481-82, 352 S.E.2d 319, 321 (1987) (concluding that an automobile graveyard established after the enactment of a zoning ordinance prohibiting such use was not grandfathered, and that a county board of supervisors could not grant an exception to the zoning

9

ordinance for that use by implication), and *Dick Kelly Enterprises v. City of Norfolk*, 243 Va. 373, 381-82, 416 S.E.2d 680, 685-86 (1992) (concluding that a landowner could not challenge a zoning violation under a vested rights theory, because his use of the property as an apartment complex rather than a motel was unlawful from the start). The automobile graveyard in *Booher* was not established prior to the enactment of a zoning ordinance and had not been approved by a special exception, and so was never a lawful use. 232 Va. at 481-82, 352 S.E.2d at 321. The automobile graveyard here is also unlike the apartment complex in *Dick Kelly Enterprises*, because the use of that property as an apartment rather than as a motel was in violation of the certificate of occupancy and unlawful "from its inception." 243 Va. at 381-82, 416 S.E.2d at 685.

This case is also unlike those cases cited by the County, concerning whether a trespasser's use can *establish* a lawful nonconforming use in the first instance. *See, e.g.*, *County of Fayette v. Cossell*, 430 A.2d 1226, 1228-29 (Pa. Commw. Ct. 1981) (concluding that an adjacent landowner's use of a parcel as a junkyard without formal permission from the parcel's landowner established a lawful nonconforming use of that property for a junkyard); *but see McMilian v. King Cty.*, 255 P.3d 739, 749-51 (Wash. Ct. App. 2011) (concluding that a trespasser's use "may not establish a valid nonconforming use" on a parcel, but also noting that a parcel's true owner could acquiesce in another person's use of his property without express permission, and that "[b]y virtue of permitting another individual's use of the property, the landowner obtains the right to continue that use even after it becomes a nonconforming use").

It is undisputed that a lawful nonconforming use was established in the first instance in this case. The issue in this case is whether the lawful nonconforming use of Parcel 20A as an automobile graveyard, confirmed by the County in 1982, was somehow terminated.

A nonconforming use can be terminated by intentional abandonment or discontinuance of the use:

> 1. If any nonconforming use is *discontinued for a period of two years, it shall lose its nonconforming status*, and any further use shall conform to the provisions of this chapter.
>
> 2. For the purposes of this section, cessation of a nonconforming use for the aforesaid period shall be conclusively presumed to establish discontinuance.
>
> 3. Any nonconforming use which is intentionally abandoned, without regard to the length of time which shall have passed, shall be terminated, and any further use shall conform to this chapter.

County Code § 32-601.21 (emphasis added).[2]

The circuit court ruled that the nonconforming use of Parcel 20A was not abandoned. That ruling has not been appealed. It is the law of this case. *Lee v. Spoden*, 290 Va. 235, 253, 776 S.E.2d 798, 808 (2015) (noting that "holdings uncontested on appeal become the law of the case") (citation and internal quotation marks omitted).

The assignments of error in this case concern whether the circuit court erred in ruling that the nonconforming use was not discontinued. Thus, we must discern whether the nonconforming use of Parcel 20A as an automobile graveyard was ever *discontinued* to an extent that the property's lawful nonconforming use status as an automobile graveyard was terminated.

For Parcel 20A to lose its nonconforming use status, its lawful nonconforming use as an automobile graveyard had to be discontinued for a period of two years. *See* County Code § 32-601.21(1) and (2). The County Code defines "use" to "mean any activity, fixture or structure to which land [] is devoted . . . ." County Code § 32-100. "Discontinue" is not defined in the

---

[2] The County did not assert an intentional abandonment theory on appeal. Our analysis is therefore limited to whether the nonconforming use of Parcel 20A as an automobile graveyard was discontinued for a period of two years.

ordinance, therefore we will give the word its usual meaning. Discontinue means "to break off: give up: terminate: end the operations or existence of: cease to use." Webster's Third New International Dictionary 646 (2002). Parcel 20A's nonconforming use status was that of an automobile graveyard. "The nonconforming status of any nonconforming use, lot or structure shall adhere solely to the use of the land, and not to the owner, tenant, or other holder of any legal title to the property or the right to make use thereof." County Code § 32-601.11.

There is no intent element in the relevant nonconforming use termination ordinance. *See id.*; County Code § 32-601.21(1) and (2). The intent to discontinue a particular use is not relevant to the analysis. The nonconforming use must be discontinued in actuality. Also, under the plain language of the zoning ordinance, the nonconforming status, as an automobile graveyard, adheres solely to the use of the land. County Code § 32-601.11. Who owns or has legal use of the property is not relevant to the analysis of what the use status of the property is or was at a particular point in time. Such use status is defined by ordinance.

An "automobile graveyard" is defined as "any lot, place, or parcel, except lawful motor vehicle repair or service facility, upon which five or more inoperative motor vehicles of any kind are found." County Code § 32-100.[3] Thus, a parcel is "used" as an "automobile graveyard," and has the use status as an automobile graveyard, if it has five or more inoperative motor vehicles upon or occupying the parcel.

The County claims that the circuit court erred in ruling that the nonconforming use was not discontinued because LMG bought the property in 1987 and it never placed junk vehicles or

---

[3] Similarly, a "junk yard" is "any land or structure used for the storage, keeping, collection, salvage, sale, disassembling, wrecking, baling, maintenance, or abandonment of junk or other discarded material," which "may include 'motor vehicle graveyard.'" County Code § 32-100.

12

parts on Parcel 20A throughout its ownership period. However, whether LMG placed any junk cars on its property during its ownership is not dispositive of the use status of Parcel 20A as an automobile graveyard under the terms of the County's zoning ordinances.

Likewise, the County claims that the circuit court erred in finding that Archie's property has a lawful nonconforming use because Archie did not own the property between 1987 and 1992. It also asserts that the circuit court erred in that regard for the additional reasons that Archie did not have permission from the owner or other legal right to operate an automobile graveyard on the property between 1987 and 1992. However, none of those facts are dispositive of the issue of whether Parcel 20A's use status as an automobile graveyard was discontinued during that time period.

Given the definitions of the terms used in the County's ordinance, discontinuing the use of a parcel as an automobile graveyard requires that there be less than five inoperative motor vehicles on that parcel. The lawful nonconforming use status of the property as an automobile graveyard would be discontinued and terminate as per the County ordinance, only if fewer than five inoperative motor vehicles were upon or occupying the property for at least two years.

The use of Parcel 20A as an automobile graveyard was established before the County Code was enacted, and continued as a lawful nonconforming use after the County enacted its zoning ordinances. The circuit court found that the "actual use on Parcel 20A as an automobile salvage business operation has not stopped since prior to the enactment of the Prince William County Zoning Ordinances." There was testimony from numerous witnesses that the parcel had never been cleared of inoperable vehicles, and Archie testified that over 100 inoperable vehicles remained on the property throughout the time it was owned by LMG. Although the County contends that Archie continued this use without permission from, and contrary to the desires of,

13

LMG, it does not identify any evidence to rebut the presumption that the circuit court's factual finding regarding the actual use of the property is correct.

That LMG bought the property, and apparently wanted the junk vehicles to be removed, did not change the status of the property as an automobile graveyard under the County zoning ordinances. LMG never brought to fruition its apparent intent to discontinue the use of the property as an automobile graveyard by removing the inoperable vehicles, and thus that use status never changed. There is ample evidence to support the factual findings of the circuit court concerning the actual use of the parcel, and its conclusion that the use of the parcel as an automobile graveyard was not discontinued.

CONCLUSION

For the foregoing reasons, we cannot conclude that the circuit court erred by reversing the decision of the BZA and determining that the use of Parcel 20A as an automobile graveyard is a lawful nonconforming use which has not been discontinued. Accordingly, we affirm the judgment of the circuit court.

*Affirmed*.